In re Raymond Edward THOMSEN
and Kim Jonette Thomsen,
Debtors.

Raymond Edward Thomsen and Kim
Jonette Thomsen, Plaintiffs,

v.

Department of Education, Defendant.

Bankruptcy No. 98–33578–7.
Adversary No. 98/00171.

United States Bankruptcy Court,
D. Montana,
Butte Division.

June 7, 1999.

Raymond E. Thomsen & Kim J. Thomsen, Missoula, MT, pro se.

Bill Mercer, Asst. U.S. Attorney, Missoula, MT, for defendant.

### ORDER

JOHN L. PETERSON, Chief Judge.

Plaintiffs/Debtors Raymond Edward Thomsen ("Raymond") and Kim Jonette Thomsen ("Kim"), *pro se,* commenced this adversary proceeding on December 17, 1998, seeking a determination that various educational loans owing by both Plaintiffs to the Defendant United States of America, Department of Education are dischargeable on grounds of undue hardship. After due notice, trial was held at Missoula on May 20, 1999, with both Plaintiffs appearing *pro se* and testifying, and Asst. U.S. Attorney Bill Mercer ("Mercer") appearing on behalf of the Defendant. Defendant's Exhibits ("Ex.") A, B, C, D and E were admitted into evidence without objection. At the close of the trial the Court took the matter under advisement and granted the Defendant time in which to submit its affidavit of the amount of monthly payments required to pay off the Plaintiffs' student loans owed to Defendant. Defendant's affidavit and brief have been filed and reviewed by the Court, together with the record and the applicable law. This matter is ready for decision.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine to determine dischargeability of particular debts under 28 U.S.C. § 157(b)(2)(I). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. For the reasons set forth below, Judgment shall be entered in favor of the Plaintiffs discharging their educational loan debt owed to the Defendant pursuant to 11 U.S.C. § 523(a)(8), since excepting such debts from Plaintiffs' discharge will impose an undue hardship on the Debtors and their dependents.

### FACTS

The parties filed a stipulation on May 18, 1999, which set forth the following stipulated facts:

1. Plaintiffs filed a Chapter 7 bankruptcy petition on December 17, 1998.

2. Raymond has failed to repay the principal and interest on five guaranteed student loans ("GSL"), the proceeds of which he received. His loans were in default as of August 2, 1986.

3. Kim has failed to repay the principal and interest on four GSL's, the proceeds of which she received. Her loans were in default as of August 2, 1986.

4. Each of the aforementioned student loans were made by private lenders and guaranteed by the Defendant.

5. Raymond receives a non-service connected disability pension from the United States of American, Department of

Veterans Affairs ("VA"). Raymond was awarded this non-service connected pension status on January 27, 1997. At present Raymond receives a monthly check from the VA in the amount of $1,332.00. A service connection has not been established.

6. The VA pension referred to above in paragraph 5 includes a need-based component. As a result, income earned by either Raymond or Kim would reduce the amount of the pension.

7. Records from the Internal Revenue Service ("IRS") document that the Plaintiffs' federal income tax refunds have been forwarded to the Defendant for application against their student loan debt. In tax years 1989, 1991, 1993, 1994, and 1996, a total of $9,182.30 was taken out of Plaintiffs' tax refunds and forwarded to the Defendant to be applied against the Plaintiffs' loan balance.

Other facts which are not stipulated are nonetheless undisputed. Plaintiffs commenced this adversary proceeding by filing a *pro se* complaint on December 17, 1998, seeking a hardship discharge of their student loans owed to the Defendant. The Defendant filed its answer April 16, 1999.

Raymond and Kim each attended Eastern Montana College at Billings. Before he attended college Raymond served in the United States Marine Corps. He was wounded in the Vietnam war and spent a year in a hospital recuperating. In 1985 Raymond received a Bachelor of Science degree in Economics, which he has never used for employment. Raymond has not been regularly employed since 1994. He is totally disabled, and has been diagnosed by the VA as having a bipolar disorder. Raymond's testimony that his disability is permanent is uncontroverted, and based upon that uncontroverted evidence the Court finds he is permanently and totally

disabled. He testified he has not made a payment toward his GSL's since 1985 other than by garnishment, but the affidavit of Alfredo Francisco's ("Francisco"), loan analyst for the Defendant, shows that the Defendant received Raymond's income tax refunds in 1991 for the sum of $1,107.64, and in 1993 for the sum of $409, both of which were offset against Raymond's educational loan debt.

Kim also attended Eastern Montana College, financed with her student loans. Kim earned an associates degree in general business in 1985. Her employment history, however, has been limited to manual labor jobs. She is presently unemployed, although she testified that she has applied for work at fast-food establishments in the Missoula area. Her physical condition has not changed since she was employed in the Seattle area in 1996 through 1998, when she worked in a variety of manual labor jobs through a temp agency. Kim earned $7,413 in 1996, $9,902.43 in 1997 and $5,145 in 1998 through her employment. Ex. A (Statement of Financial Affairs, p. 1).

Debtors listed the Defendant on their Schedule F as having unsecured claims for student loans in a total amount of $31,-652.18 [1] on the petition date. Ex. B (Schedule F). Debtors' total unsecured debt is $40,771.73. They own no real property and listed personal property worth $1,480 at Schedule B. The Trustee filed a no-asset report on March 10, 1999. A Discharge of Debtors was entered April 13, 1999.

Debtors have three (3) daughters, aged 14, 11 and 9 living with them. Raymond's VA pension is tax free and is the Debtors' sole source of income in the stipulated amount of $1,332.00 per month. Defendant's Ex. C (Schedule I). Their monthly expenses total approximately $1,295.95, including $400 for food for a family of 5 [2], $50 monthly recreation expenses which

---

1. Francisco's affidavit lists Raymond's total educational loan debt as of May 25, 1999, as $20,765.13, and Kim's as $11,734.94, for a total of $32,500.07.

2. Raymond testified that the $400 per month food expense was "a little light" and that their food expense is actually a bit higher.

pays for, among other things, newspaper subscriptions for the "Wall Street Journal" and the "Missoulian". Ex. D (Schedule J). Other expenses include $490 rent, $125 electricity, $50 telephone, $29.95 "Other" which Raymond testified was for cable TV, $50 clothing, $20 laundry and dry cleaning, and $80 transportation. Despite Exhibit I, J and the Debtors' stipulated income, Raymond testified that the Debtors' expenses exceed their income each month. Kim testified that the Debtors' income is below the federal poverty level for a family of five. The Defendant offered no evidence to refute that the Debtors live below the federal poverty level. The Court finds that the Debtors' $1,295.95 monthly expense total is reasonable for a family of five, and do not reflect unnecessary luxury or extravagant living by the Debtors. Their stipulated monthly income of $1,332 results in their having a surplus available to pay their student loans each month, at best, in the sum of approximately $36.

The Defendant's affidavit of Francisco states that as of May 25, 1999, that Raymond owes the United States a total of $20,765.13, for six student loans, and Kim owes as of the same date a total of $11,-734.94 for four GSL's for a total of $32,-500.07. Four of Raymond's loans accrue interest at nine percent (9%), one at 5%, and one at 3%[3]. Kim's four loans all accrue interest at 9%. A rough approximation of annual interest accruing on Debtors' total student loan debt at 9% is slightly less than $2,925 per year. Debtors' $36 surplus would pay only about 15% of the annual interest[4].

Both Debtors testified that they have tried to reach a payment arrangement with the Defendant, but that the Defendant always demands more than the Debtors can pay. Kim testified that the Defendant demanded $800 payments each month for the first six months, after which it

agreed it would make an arrangement with the Debtors. Defendant offered no evidence to refute Debtors' testimony. In fact, Francisco's affidavit states that all loans are in default and payable in full, but that:

> [h]owever, [Defendant] may approve a payment plan on a monthly installment basis for up to 36 months. Raymond Thomsen's monthly payment would be approximately $653 per month. Kim Thomsen's monthly payment would be approximately $399 per month.

d. Alternatively, pursuant to 34 CFR Part 685, Income Contingent Repayment Plan (ICRP) is available to borrowers who are otherwise unable to meet the required monthly payments. This authority has been extended to defaulted student loans held by [Defendant]. To be considered for ICRP, a borrower must give written authorization for the Internal Revenue Service (IRS) to release certain tax account information to [Defendant] for a period of five years. The authorization will be completed once initially, then again every five years, to remain in the program. The monthly payment under the ICRP is based on family size, income, and amount of debt.... Based upon an estimated annual income of $15,984.00, debt amount of $20,765.13, and with 3 dependents, Raymond Thomsen's ICRP monthly payment would be approximately $0.00 (zero dollars). Based upon an estimated annual income of $7,000, debt amount of $11,734.94, and with 0 dependent, Kim Thomsen's ICRP monthly payment would be approximately $0.00 (zero dollars). It is possible under ICRP that payments are not large enough to pay off the loan in 25 years. If this situation occurs, after 25 years the unpaid amount will be discharged,

**3.** Francisco's affidavit shows that $1,968 of Raymond's total principal debt of $11,309.32 accrues interest at 5% or 3%. ¶ 2a.

**4.** If Debtors' $79.95 for newspapers and cable TV were added to their $36 surplus, the $116 per month would pay $1,392 per year, or less than 48% of the annual interest.

and the amount discharged will be considered taxable income.

It is against the foregoing backdrop that Debtors seek to discharge their educational loan debt.

## DISCUSSION

At the time Debtors filed their voluntary Chapter 7 bankruptcy petition on December 17, 1998, 11 U.S.C. § 523(a) had been amended to read as follows:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

■ The Bankruptcy Code does not define "undue hardship." Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. Kan.1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr.R.I.1987). As the court in *Brown* noted:

It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. In addition:

[A] loan ... that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is unable to maintain himself and his dependents and to repay the educational debt.

*Report of the Commission of the Bankruptcy Laws of the United States,* House Doc. No. 93–137, Part I, 93rd Cong., 1st Sess. (1973) at 140, n. 14 and 15, reprinted in Collier on Bankruptcy, Appendix 2 at PI–i. In this case the record shows that Raymond's and Kim's educational loans did not enable either of them to earn any income. Raymond never used his economics degree in his employment and is now permanently and totally disabled. Kim has only been able to find work as a manual laborer. Her associates degree has been of no benefit or use to her in her employment.

■ In a complaint to determine the dischargeability of debt, a debtor has the burden of proof to show evidence of undue hardship sufficient to discharge the student loan. *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993); *Rose v. United Student Aids Funds MT (In re Rose)*, 6 Mont.B.R. 462, 464 (Bankr.Mont.1988); *Connecticut Student Loan Found v. Keenan (In re Keenan)*, 53 B.R. 913 (Bankr.Conn.1985).

■ Courts have identified several factors and tests to consider when determining whether "undue hardship" exists in a particular case. Prior to the adoption of the Bankruptcy Code, the bankruptcy court for the Eastern District of Pennsylvania propounded an oft-cited three-prong undue hardship test. *Pennsylvania Higher Educ. Assistance Agency v. Johnson*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979). Since enactment of the Bankruptcy Code, the United States Court of Appeals for the Second Circuit adopted another test for determining "undue hardship" in the educational loan context. *Brunner v. New York State Higher Educ. Services Corp. ("Brunner")*, 831 F.2d 395, 396 (2nd Cir. 1987). According to the Second Circuit, in

order to gain discharge under 11 U.S.C. § 523(a)(8)(B), a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* The Ninth Circuit Court of Appeals adopted the *Brunner* test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). *United Student Aid Funds v. Pena ("Pena"),* 155 F.3d 1108, 1114 (9th Cir.1998) ("We adopt the *Brunner* test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"). In *Pena,* the Court summarized the *Brunner* test as thus,

> First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner,* 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.'" *Id.* (citing *In re Bryant,* 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).
>
> Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner,* 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.*

The third prong requires "that the debtor has made good faith efforts to repay the loans...." *Brunner,* 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). *Brunner,* 46 B.R. at 754–55. Section 523(a)(8) was a response to "a 'rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts.'" *Id.,* (quoting the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students ... from abusing the bankruptcy system." *Id.*

*Pena* at 1111. One court has described "good faith" under the *Brunner* test as:

> [A] moving target that must be tested in light of the particular circumstances of the party under review.... [T]he characterization of that effort must reflect not only a party's objective conduct, but also the environment in which that conduct occurs. In those instances in which the debtor cannot maintain a minimal standard of living even without payment of student loans, the demonstration of good faith does not necessarily command a history of payment. It does require a history of effort to achieve repayment, such as when a borrower diligently uses a deferment period to attempt the reorganization of her financial affairs.

*Maulin v. Salliemae (In re Maulin),* 190 B.R. 153, 156 (Bankr.W.D.N.Y.1995). In *Maulin,* the debtor had insufficient income to support herself and her daughter, and relied on the charity of family members to meet the necessary expenses of life. *Id.* at 155. In addition, the debtor established at trial that she had a disabling back injury that limited her prospects for future employment. *Id.* Nevertheless, the court found that since the debtor had failed to make any payments, and had never requested a deferment of payments while she made efforts to secure employment or

a reorganization of her affairs, she could not be said to have made a good faith effort at repayment. *Id.* at 156–57.

A bankruptcy court in the Ninth Circuit has said that a debtor may demonstrate good faith under the *Brunner* test by demonstrating an effort at minimizing monthly expenses, even if he or she can come up with sufficient excess income to pay installments on the educational loans. *Plumbers Joint Apprenticeship and Journeyman Training Comm. v. Rosen (In re Rosen)*, 179 B.R. 935, 941–42 (Bankr.Or.1995). In *Rosen*, the debtor proved the source of his financial troubles arose from a divorce and a debilitating physical injury, and therefore, the court reasoned, since the debtor had minimized his expenses while living on worker's compensation benefits, and because the majority of his financial troubles arose from no fault of his own, discharge under § 523(a)(8)(B) was warranted. *Id.*

■ In the case *sub judice*, the Court concludes that the Debtors have satisfied the *Brunner* test, and thus their educational loan obligations owing to the Defendant are dischargeable.

## I. First Prong.

As set forth above, the *Brunner* analysis starts with an examination of whether Debtors can maintain a minimal standard of living and still repay their student loan obligations. The facts as set forth above clearly demonstrate that Debtors are already living below the federal poverty level for a family of five. Even if they completely eliminated their newspaper subscriptions and cable TV bill, they could not even pay half of the annual accrued interest, which would therefore continue to accrue each year and put the Debtors further in debt. Raymond is totally and permanently disabled. There is no evidence that his VA pension income will increase.

Kim has applied for employment since moving to Missoula, but has not found any. Her work history shows that she has only worked as a manual laborer, and she has nothing else to look forward to since she has no more than an associates degree. She cannot borrow further educational loans from the Defendant, according to Mercer, because of her current default, and so cannot improve her job prospects by completing her bachelor's degree requirements.

Moreover, the stipulated facts show that any income earned by Raymond or Kim would reduce the amount of Raymond's VA pension. Therefore, any income Kim could earn would simply replace Raymond's lost VA pension income. Since the most she has earned since 1996 is $9,902.43 per year in 1997, there is no evidence that she can earn enough to replace Raymond's VA pension and have anything left over to repay her student loans at the rate of specified by Francisco at $399 per month. With little hope for increased net earning capacity, Raymond's permanent and total disability, and their already minimal standard of living, the Court sees no way that Debtors could ever repay either or both of their educational loan debts and maintain their minimal standard of living.

The Defendant argues that under the ICRP both Debtors' payments would be $0, and so there is no undue hardship. The first prong, however, requires simply that the Debtors show they cannot repay the loans and maintain a minimal standard of living. The Court finds they have satisfied their burden under the first prong.

## II. Second Prong.

■ To satisfy the second prong of the *Brunner* test Debtors must prove that their state of affairs is likely to persist. Raymond is a disabled veteran with a bipolar disorder receiving a VA pension. He testified his disability is permanent, and there is no evidence that Raymond will be able to recover from this disability and resume employment. Exceptional circumstances under the second prong may include psychiatric problems such as Ray-

mond's. *In re Shankwiler*, 208 B.R. 701, 706 (Bankr.C.D.Cal.1997); *Matter of Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993). This Court finds that Raymond's bipolar disorder described in this case is a "serious, ongoing mental disability" which prevents Raymond from obtaining meaningful permanent employment. *Pena*, 155 F.3d at 1114. He has never used his economics degree in his employment history, and his bipolar disorder will in all likelihood prevent him from ever obtaining meaningful permanent employment, whether in the field of economics or otherwise. This conclusion is corroborated by the continuing VA disability pension payments which constitutes the Debtors' sole source of income. *Id.* Raymond has satisfied his burden under the second prong.

Likewise, Kim has shown that her state of affairs is likely to persist for a significant portion of the repayment period. *Pena*, 155 F.3d at 1111. Kim has not been able to find employment other than as a manual laborer. There is nothing in the record suggesting she has been purposefully underemployed. Without further education there is nothing in the record to suggest she will ever be able to find meaningful permanent employment as anything other than a manual laborer. However, she cannot complete her education without further educational loans, and the Defendant refuses to approve further educational loans because of Kim's default.

Kim testified that she wishes to become eligible for further financial assistance in order to return to school and finish her bachelor's degree work in the hope of obtaining higher paying work than the manual labor to which she has been limited. However, she testified that the Defendant demands 6 monthly payments of $800 before it will make an arrangement with the Debtors. The evidence in this case clearly establishes, as discussed above, that the Debtors cannot pay $800 per month.

Moreover, the Defendant did not even follow its own special rule provided at 20 U.S.C. § 1078–6(b) for renewed eligibility for a defaulted borrower, which requires: "The guaranty agency shall not demand from a borrower as a monthly payment amount under this subsection more than is reasonable and affordable based upon the borrower's total financial circumstances." The Defendant offered no evidence how it established the $800 monthly payment based upon these Plaintiffs total financial circumstances. Based upon the evidence discussed above, the $800 monthly payment demanded by Defendant is not reasonable and affordable based upon Kim's and Raymond's total financial circumstances. There appears no way out of this vicious circle for Kim for the foreseeable future. She cannot increase her income because she cannot finish her education, and cannot finish her education because of a lack of income.

Furthermore, because of the need-based component of Raymond's VA disability, any income Kim earns through employment reduces his VA pension. This constitutes a disincentive, not of Kim's making, against her returning to work as a manual laborer. The Debtors rely on Raymond's VA pension to support themselves and their 3 children. Kim's employment and earning history shown by this record is not such that her income is likely to ever result in a surplus sufficient to repay her educational loans, after Raymond's VA pension is correspondingly reduced.

Francisco's affidavit and Defendant's brief recognizes that the Debtors are unlikely to ever repay their loans, and argues that their programs allow for discharge and that therefore no undue hardship exists. Under the ICRP her monthly payments would be $0 and "are not large enough to pay off the loan in 25 years." Francisco Aff. ¶ 2d.

Given Debtors' current station in life, it is doubtful Debtors will have the wherewithal to repay the student loan obligations during their lifetime. Thus, the Court concludes both Debtors have satisfied the second prong of the *Brunner* test.

That conclusion is not changed, as Defendant urges, because Debtors' loans would be discharged after 25 years. In that event the unpaid amount, together with the interest which will have accrued in 25 years, would be discharged by the Defendant and treated as taxable income. In other words, the Debtors would simply exchange one huge nondischargeable debt for educational loans for another in the form of nondischargeable income taxes. *See* 11 U.S.C. § 523(a)(1). Under these circumstances of clear and undue hardship, this Court deems the better result is to discharge the Debtors' educational loan debt, which they have no prospect of ever repaying, now and give the Debtors the benefit of a fresh start.

### III. Third Prong.

The third prong requires that the debtor has made good faith efforts to repay the student loans. *Pena*, 155 F.3d at 1111; *Brunner*, 831 F.2d at 396. Raymond testified that he made payments against his student loan debt until 1987, and that later his wages were garnished for repayment. Kim testified that she has paid back an amount over $7,000, almost equal to her original principal amount of debt, before interest. The Plaintiffs' testimony is uncontroverted.

Defendant's own affidavit and the stipulated facts show that Debtors' tax refunds have been paid to the Defendant in the total amount of $9,182.30, $7,665.66 by Kim and $1,516.64 from Raymond. Francisco aff. ¶ 2e. These payments show the Debtors' good faith as required under *Brunner*.

Further evidence of Debtors' good faith is shown by their uncontroverted testimony that they have attempted to reach an agreement with the Defendant on several occasions, without success. Both testified that they contacted the Defendant on several occasions. Raymond requested three times an application for income based adjustments, but the Defendant never sent the Debtors the appropriate paperwork. Even though the "Special rule" of § 1078–

6(b) and 34 C.F.R. § 682.200(b) ("Satisfactory repayment arrangement" (3)) requires the Defendant to limit its demand for 6 consecutive monthly payments to no more "than is reasonable and affordable based upon the borrower's total financial circumstances" to allow Kim to renew her eligibility for additional student financial assistance, the evidence is that the Defendant demanded $800 payments per month. From the Debtors' attempts to reach agreement with Defendant, and Defendant's failure to respond or to follow the "Special rule" of § 1078–6(b) to allow Kim to renew her eligibility for educational assistance to complete her education and enhance her ability to increase her income and chances for repayment, the Court finds that the Debtors have satisfied the third "good faith" prong.

Defendant cites *In re Andresen*, 232 B.R. 127 (8th Cir. BAP 1999) for the proposition that the Court has authority to discharge some of the Debtors' educational loan debt without discharging it all. However, in the Ninth Circuit under a holding of the Bankruptcy Appellate Panel ("BAP"), a partial discharge of student loans is not appropriate under § 523(a)(8). *United Student Aid Funds Inc. v. Taylor (In re Taylor)*, 223 B.R. 747 (9th Cir. BAP 1998); *In re Brown*, 227 B.R. 540, 547 (Bankr.S.D.Cal.1998); *In re Shankwiler*, 208 B.R. at 707–08. Absent a clear conviction that the BAP's interpretation in *Taylor* is wrong, the Court will defer to its holding that a partial discharge, as suggested by Defendant, is not appropriate.

### CONCLUSION

The Debtors do not have the ability to repay their educational loans and maintain their standard of living, which is below the federal poverty level. Even disallowing their expenses for newspaper subscriptions and cable TV, they cannot even pay half the annual accruing interest. Raymond is permanently and totally disabled, and Kim has no realistic prospect of increasing her income from employment without reducing

Raymond's VA disability pension on which Debtors rely for their living expenses. The Debtors have made good faith efforts to repay their loans and reach an agreement with the Defendant. Defendant has received substantial repayment from the Debtors' tax refunds, but has failed to respond to Debtors' requests to reduce their payments to accord with their actual financial circumstances. Accordingly,

IT IS ORDERED a separate Judgment on the merits shall be entered in this adversary proceeding for the Debtors/Plaintiffs, Raymond Edward Thomsen and Kim Jonette Thomsen, and against Defendant United States of America; and Plaintiffs' educational loans due to Defendant are dischargeable and discharged pursuant to 11 U.S.C. § 523(a)(8).