**Mark Allen LIMKEMANN, Debtor.**

**Mark Allen Limkemann, Plaintiff,**

v.

**U.S. Department of Education, Defendant.**

**Bankruptcy No. 02–03338. Adversary No. 02–9180.**

United States Bankruptcy Court, N.D. Iowa.

Aug. 9, 2004.

Henry E. Nathanson, Coggon, IA, for debtor.

*RULING RE: DEBTORS' COMPLAINT TO DETERMINE DISCHARGE-ABILITY OF DEBT*

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on July 7, 2004, on Debtor's Complaint to Determine Dischargeability of Debt. Debtor Mark Allen Limkemann appeared in person with Attorney Henry Nathanson. Defendant U.S. Department of Education appeared by Assistant U.S. Attorney Martin McLaughlin. After the presentation of evidence, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor Mark Allen Limkemann asserts that he is entitled to receive a hardship discharge of his student loan obligation under § 523(a)(8). Defendant U.S. Department of Education argues that Debtor is not entitled to a hardship discharge. It asserts that because Debtor is eligible for the Income Contingent Repayment Plan offered by the William D. Ford Program, he would not suffer undue hardship if required to repay his loans.

## FINDINGS OF FACT

Debtors Mark Allen Limkemann and Jill Denise Limkemann filed a joint Chapter 7 petition on September 23, 2002. Debtors received a general discharge on January 2, 2003 and the bankruptcy case was closed September 25, 2003. Prior to the closing of the case on December 20, 2002, Debtor Mark Limkemann ("Debtor") commenced an adversary proceeding to determine the dischargeability of his student loan obligations to the U.S. Department of Education ("DOE"). In 2003, Debtor and the DOE reached a tentative settlement agreement. However, the settlement negotiations broke down, and this Court dismissed the adversary proceeding on August 18, 2003, for failure to comply with this Court's order to complete the agreement and dismiss the complaint.

The DOE petitioned this Court to reopen the adversary proceeding on October 23, 2003, in order to continue with the settlement negotiations. The petition was granted on October 27, 2003. On April 1, 2004, Debtor filed a status report, which stated that the reason for the delay in finalizing the agreement was the DOE's

refusal to follow through with the settlement as agreed. Debtor requested a status conference to set a trial date, and the trial was held on July 7, 2004.

At trial, Debtor introduced testimony and medical records relating to Debtor's heart condition. Debtor suffers from a condition called atrial fibrillation with atrial flutter, which is essentially an irregular heartbeat. This condition periodically causes Debtor to suffer attacks bearing symptoms similar to a stroke. It was discovered in November 2001, and Debtor has had a number of episodes since that time, the most recent of which occurred two weeks prior to trial. Atrial fibrillation is a potentially life-threatening condition. Debtor testified that he could develop a clot in his heart that could travel to his brain and cause him to suffer a stroke and possibly die. Debtor's condition is chronic, and requires expensive prescription medications which Debtor does not take because he cannot afford them.

Debtor has an eleventh grade education. He incurred student loans in 1986 to finance a three-month program at a school in Missouri to learn how to drive a semi-truck. Debtor worked in the trucking industry for 14 years, but truck driving became too stressful. For the last three years, Debtor has worked as a welder, earning ten dollars per hour.

The combined net monthly income of Debtor and his wife, assuming that both work full time and do not miss any work for medical emergencies, is $2,252.38. Debtor does not have medical insurance. He has substantial medical bills, some of which arose post-petition and are not included in the Chapter 7 discharge. At trial, Debtor stated that his increasing medical debt precipitated the filing of the bankruptcy petition.

The outstanding balance on Debtor's student loan at the time of trial, with interest, stands at $5,638.89. Sometime in 1999, a collection agency contacted Debtor regarding repayment of his student loans. The principal balance on the loan was $2,705.87. Debtor offered to settle the claim with a lump-sum payment of $3,000, but his offer was refused. Debtor testified that he was unclear about who to contact to discuss the debt, and that he was unaware of his repayment options, but would have taken advantage of them if they had been properly explained to him.

On Schedule J, Debtors list the following expenses:

| | |
|---|---|
| Lot rent/payment for mobile home | 534.42 |
| Utilities | 106.15 |
| Telephone | 56.12 |
| Food | 200.00 |
| Clothing | 50.42 |
| Laundry | 40.00 |
| Transportation | 250.00 |
| Loan | 143.00 |
| Child support payments | 480.00 |
| Haircuts | 10.00 |
| Medical care | 400.00 |
| Pet supplies | 30.00 |
| Prescriptions | 198.00 |
| Student loans | 108.00 |
| Toiletries | 30.00 |
| Trash collection | 25.00 |
| **TOTAL** | 2,660.69 |

At trial, Debtor admitted that he has never made the $108.00 student loan payment, that his and his spouse's child support payments now total only $340.00 per month, and that his medical payments can range from $250.00 to $400.00 per month. In addition, Debtor testified that he actually spends only $12.00 per month on one prescription and that he does not take the rest of his prescribed medications because they are too expensive. Debtor also stated that the lot rent for his mobile home will soon increase by $50.00 per month. He testified that all other expenses remain the same.

The DOE does not dispute that Debtor has a heart condition that has resulted in costly medical bills. However, the DOE asserts that Debtor may not be entitled to

receive a discharge of his student loan obligations because he qualifies for restructuring of his loan debt under the Income Contingent Repayment Program ("ICRP"). The DOE did not inform Debtor of this option until *after* he filed his bankruptcy petition. Under such a plan, Debtor could maintain his obligation on the student loans for as little as $0 per month. As a result, the DOE argues, Debtor would not suffer undue hardship if he were denied a discharge.

## CONCLUSIONS OF LAW

### Undue Hardship Under § 523(a)(8)

■ Debtor seeks a determination that excepting the student loan obligation from his discharge would impose an undue hardship on him within the meaning of 11 U.S.C. § 523(a)(8). That section provides:

A discharge under section 727 of this title does not discharge an individual debtor from any debt—for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). Debtor must prove the existence of undue hardship by a preponderance of the evidence. *In re Ford*, 269 B.R. 673, 675 (8th Cir. BAP 2001).

■ "Undue hardship" is not defined by the Bankruptcy Code. To determine whether undue hardship exists, the Eighth Circuit has established a "totality of the circumstances" test. *In re Long*, 322 F.3d 549, 553 (8th Cir.2003) (rejecting the *Brunner* test as too restrictive); *In re*

*Andrews*, 661 F.2d 702 (8th Cir.1981). The Court of Appeals held in *Long* that:

[i]n evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adverse—in the debtor's financial position.

*Long*, 322 F.3d at 554 (citations omitted).

■ The legislative history behind the exception to discharge for student loans reveals that Congress sought to close a perceived loophole in the student loan program. This loophole allowed students to "escape their student loan obligations by filing bankruptcy on the eve of a lucrative career." *In re Andresen*, 232 B.R. 127, 130 (8th Cir. BAP 1999). Congress excepted student loans from discharge to "rescue the student loan program from insolvency, and to prevent abuse of the bankruptcy process by undeserving students." *Id.*

■ In considering the debtor's past, present, and reasonably certain future resources, the court examines the debtor's employment, work history, and earnings capability. *In re Cheney*, 280 B.R. 648, 661 (N.D.Iowa 2002). A debtor's physical

condition should be taken into consideration when evaluating his financial prospects. "The Eighth Circuit Court of Appeals has observed that it is appropriate to consider a debtor's disease or disability as a factor in the determination of undue hardship because such a situation often requires expensive treatment and may affect an individual's ability to work." *Ford*, 269 B.R. at 677 (citing *Andrews*, 661 F.2d at 705). Long-term physical infirmities may prevent the debtor from securing or sustaining gainful employment. *In re Meling*, 263 B.R. 275, 279 (Bankr. N.D.Iowa 2001)("*Meling I*"), aff'd *In re Meling*, 2002 WL 32107248 (N.D.Iowa 2002)("*Meling II*").

■ The debtor's total living expenses should not exceed what is reasonable and necessary. *Long*, 292 B.R. 635, 638 (8th Cir. BAP 2003). To be reasonable and necessary, expenses must be modest, not extravagant, and commensurate with the debtor's resources. *Meling II*, 2002 WL 32107248, at *5. Provided that total expenses remain minimal, the debtor is not expected or required to implement every conceivable cost-saving measure. *Id.* The fact that the household income may not be at or below poverty guidelines does not preclude a finding of undue hardship. *Meling I*, 263 B.R. at 280 (debtor's income was just above poverty guidelines, but other factors contributed to undue hardship discharge of student loan debt).

### Availability of ICRPs and the Determination of Undue Hardship

■ The DOE asserts that Debtor must avail himself of non-bankruptcy administrative remedies before attempting to discharge his student loans in bankruptcy. In particular, the DOE asserts that the availability of an Income Contingent Repayment Plan, or ICRP, effectively eliminates the possibility that Debtor would suffer undue hardship if denied a discharge in bankruptcy. The DOE maintains that since Debtor's obligation to pay on the loans is directly tied to his income, repayment will never cause Debtor to fall below the minimum standard of living set forth in the HHS Poverty Guidelines. 34 C.F.R. § 685.209(a). If Debtor's income never exceeds the statutory standards, he is never obligated to pay. *Id.*

The DOE does not cite any judicial authority for the proposition that bankrupt student loan borrowers are not entitled to a discharge if an ICRP is available. In this Circuit, several courts have addressed and rejected the DOE's argument, even where the debtor's payment under the ICRP would be zero. See *In re Cheney*, 280 B.R. 648, 664–66 (N.D.Iowa 2002); *In re Fahrer*, 308 B.R. 27, 35 (Bankr.W.D.Mo. 2004); *In re Strand*, 298 B.R. 367, 375–77 (Bankr.D.Minn.2003); *In re Korhonen*, 296 B.R. 492, 496–97 (Bankr.D.Minn.2003); *In re Berscheid*, 309 B.R. 5, 13 (Bankr. D.Minn.2002).

A significant problem inherent in the DOE's argument is that requiring a bankrupt debtor to participate in an ICRP whenever eligible in lieu of receiving a discharge deprives the bankruptcy court of its role in determining undue hardship. As one court observed,

> the defendants' argument is nothing less than a per se rule that there can never be a discharge of a student loan for an undue hardship where the debtor is eligible for the Income Contingent Repayment Plan. This cannot be right. The Income Contingent Repayment Plan cannot trump the Congressionally mandated individualized determination of undue hardship.

*Korhonen*, 296 B.R. at 496. The practical effect of the DOE's argument is that the undue hardship standard is nullified and no judicial analysis is needed so long as

the debtor qualifies for the ICRP. *Id.* Courts outside of the Eighth Circuit have reached a similar conclusion.

> If Congress had intended the question of dischargeability of student loans to be delegated to a nonjudicial entity, no matter how fair its formulas and intentions may appear, it could have provided for such. As attractive as it may be to postpone the decision and to rely on the long-term supervision afforded by the ICRP and the apparent fairness of its continuing review of a debtor's income ... the Court will discharge its duty as provided in the Code and make a present determination of dischargeability.

*In re Johnson,* 299 B.R. 676, 682 (Bankr. M.D.Ga.2003); *see also In re Durrani,* 311 B.R. 496, 508–09 (Bankr.N.D.Ill.2004) (substituting the ICRP for the "thoughtful and considered exercise" of the court's discretion would convert an undue hardship inquiry into "a rote and meaningless exercise").

Preventing debtors who are eligible for the ICRP from receiving a discharge in bankruptcy has risks and consequences apart from the mere inability to repay the student loan obligations. One court observed that

> in the event of a debtor's fruitless zero-payment-required participation in such an income contingent repayment program, the derivative financial woes would be significant. With interest accruing for twenty five years, and very little or absolutely no payment against the principal, [the debtor] would be hamstrung into poverty for the rest of his life.

*Strand,* 298 B.R. at 376. Such a result deprives the debtor of one of the foremost benefits of the bankruptcy system—the ability to obtain a fresh start. *See Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). There are attendant negative psychological effects for the debtor who is forced to shoulder a large debt for 25 years as well. *See Durrani,* 311 B.R. 496, 508–09; *Fahrer,* 308 B.R. at 36.

The DOE fails to address the fact that while the ICRP provides that any unpaid obligations still existing at the end of the 25–year repayment period will be discharged by the Secretary of Education, the debt forgiveness is a taxable event that could result in an enormous tax liability which would likely be non-dischargeable in bankruptcy. *Strand,* 298 B.R. at 376–77; *see also In re Thomsen,* 234 B.R. 506, 512–14 (Bankr.D.Mont.1999); *Berscheid,* 309 B.R. at 13 ("[The ICRP] is a program which dooms a debtor to perpetual indebtedness for student loan obligations. Unless [the debtor] significantly increases his income, he would go to his grave either indebted to ECMC or, if not, indebted to the IRS on the tax obligation incurred when ECMC forgives the unpaid loan. This is not a wise move."). A debtor who is unable to pay off his loans within the ICRP's 25–year period and who receives a discharge from the Secretary of Education essentially trades a non-dischargeable student loan obligation for a similarly non-dischargeable tax liability. *Thomsen,* 234 B.R. at 514.

## ANALYSIS

 Applying the totality of the circumstances test to Debtor's case, his past, present, and reasonably reliable future financial resources appear insufficient to meet his reasonable living expenses. The DOE alleges that Debtor and his spouse will earn $5,000 more this year than in 2003, and that as a result, Debtor will be able to dedicate this surplus income to student loan payments. This projected increase is based on the assumption that Debtor's spouse will not be laid off for a part of this year, and that Debtor will not

miss any more work for medical reasons. The DOE fails to consider the fact that Debtor's current income projections on Schedule I reflect monthly earnings, not annual earnings, and that the amounts listed on that schedule already assume that Debtor and his spouse will work full time for the entire year. Debtor and his spouse have a combined net monthly income of $2,252.38. There is no indication that they have the capacity to earn a substantially higher income in another line of work.

Assuming the barest expenses, eliminating the $108.00 for student loan payments and reducing the child support to $340.00, the medical payments to $250.00, and the prescription payments to $12.00, Debtor's monthly expenditures amount to $2,076.69. This leaves Debtor with a monthly surplus of $175.69. However, any surplus in balance-sheet income is probably illusory. Debtor's estimated expenses are extremely modest: he reserves only $200 per month for food for himself and his spouse, and he makes no provision for recreation, home maintenance, insurance, or charitable contributions. In addition, if Debtor were to spend the approximately $375 per month for the medications prescribed for his heart condition, the surplus would be entirely consumed.

Debtor has substantial post-petition medical bills which were not discharged in his bankruptcy proceeding, and on which he has continuing liability. His heart condition is serious and is anticipated to persist indefinitely. As Debtor does not have medical insurance, it is likely that these bills will only increase in the coming years.

Debtor's job is strenuous, and may exacerbate his medical condition. At trial, Debtor testified that he has not investigated other, less strenuous and better-paying employment opportunities. However, Debtor's education is limited, and there is no evidence on the record to show that there are other suitable job opportunities available to him. Debtor is a hard-working individual who is making a concerted effort to meet his expenses and minimize his absence from work. It is likely that if there were better opportunities available to him, he would take them.

Debtor is clearly not "on the eve of a lucrative career," and thus falls outside the class of persons targeted by Congress in limiting the availability of discharge for student loan obligations. Taking into consideration Debtor's medical condition, employment history, and earning capacity, he has demonstrated that he is unable to meet his obligations as they become due. Even though his student loan debt is modest by some standards, Debtor has sustained his burden of proof.

Debtor is not required to forgo an undue hardship discharge by virtue of his eligibility for participation in an ICRP. Were this Court to accept the DOE's argument, it would effectively be assigning its statutorily-imposed duty to determine undue hardship to the DOE, who is also the creditor seeking to prevent discharge of its claim. If Debtor were unable to show that his financial resources are insufficient to meet his expenses, perhaps eligibility for the ICRP would be a relevant factor under the totality of the circumstances analysis. However, Debtor has demonstrated that his financial situation and medical condition are such that he is entitled to receive an undue hardship discharge. The availability of an ICRP cannot trump this determination.

**WHEREFORE,** Debtor's Complaint to Determine Dischargeability of his student loans is GRANTED.

**FURTHER,** Debtor's student loan debt to the Department of Education is DISCHARGED.