**In re Janet Lynn PARKER, Debtor.**

**Janet Lynn Parker, Plaintiff,**

v.

**General Revenue Corp., Sallie Mae Services, Student Loan Guarantee Foundation of Arkansas, Defendants.**

**Bankruptcy No. 2:04–BK–18019.**
**Adversary No. 2:04–ap–01316.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

April 12, 2005.

Joe C. Barrett, Jonesboro, AR, for Debtor.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

The issue in this adversary proceeding is whether excepting from discharge the student loan debt owed by Janet Lynn Parker ("Debtor") would impose an undue hardship on the Debtor. The Debtor filed this dischargeability action against Sallie Mae Services and General Revenue Corporation on August 11, 2004, and amended the complaint to add the Student Loan Guarantee Foundation of Arkansas ("SLGF") as a defendant on September 7, 2004. After a hearing on the complaint on December 7, 2004, the Court took the matter under advisement.

Jurisdiction is pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The Debtor is a 51–year–old art teacher who teaches in the Cross County Public

School District in Cherry Valley, Arkansas, a rural community. The Debtor describes her community as situated in a low socio-economic area where 75% of the students in the schools are eligible for free lunches.

The Debtor received her teaching degree from Arkansas State University in 1991, borrowing approximately $25,000.00 in government-guaranteed student loans to fund her education. After graduation, the Debtor was unable to find a teaching position for eight years and accepted a low-paying job or jobs in the interim. At various periods since 1991, she has opted for deferments and forbearance of payments and has also made reduced monthly payments based on her low income level. With the accrual of interest added to the original principal, the Debtor now owes $69,794.17 in student loan debt.

The parties stipulated that the Debtor was eligible for the William D. Ford Direct Loan Consolidation program that would allow her to pay a monthly payment of $136.33 based on her income at the time she filed her bankruptcy petition. The loan payment would fluctuate based on her adjusted gross income. Under the William D. Ford program, the Debtor would be required to make monthly payments for 25 years, and the balance of the loan would then be forgiven. The income contingent repayment plan is only available if the Debtor is obligated for the entire amount of the loan.

The Debtor was divorced shortly before she filed her chapter 7 petition in bankruptcy on July 12, 2004. She lives in a rented house and has no dependents. The only assets she was awarded in the divorce were a garden tractor valued at $3200.00 and a two-horse trailer valued at $450.00.

She owns a 1996 Mercury Villager minivan with 182,000 miles on the odometer. Because she lives "way back in the hills" ten miles from the school where she teaches, she requires her own transportation. (Tr. at 18.)

In 2000, the Debtor was in a boating accident and suffered a broken back. She testified that the injury has left her with limited ability to lift or stand and that sitting, standing, or reclining for extended periods causes severe pain. She takes medication for her back problems and also suffers from high blood pressure and spontaneous pneumothoraxes. The latter condition necessitated the surgical removal of the right upper lobe of one of her lungs.

The Debtor earns approximately $30,200.00 a year, and her net monthly income is $1443.00.[1] According to her schedules, $396.48 a month is withheld from her salary for health insurance that the Debtor considers essential because of her chronic physical ailments. She will receive annual raises of $500.00 in future years until her salary "tops out" at a figure not stated in the record. (Tr. at 20.)

As to her monthly expenses, the Debtor's testimony focused on her scheduled expenses filed with her bankruptcy petition. The Debtor listed the following monthly expenses:

| | |
|---|---:|
| Rent | $ 225.00 |
| Electricity and heating fuel | 160.00 |
| Water and sewer | 10.00 |
| Telephone | 66.95 |
| Cell phone | 59.91 |
| Food | 260.00 |
| Clothing | 65.00 |
| Laundry and dry-cleaning | 45.00 |
| Medical and dental expenses | 85.00 |
| Transportation | 195.00 |
| Recreation, entertainment, periodicals | 5.00 |
| Automobile Insurance | 113.00 |
| Personal property taxes | 12.00 |
| Student loan payment | 564.09 |

1. The Debtor received a substantial, one-time salary raise after she filed for bankruptcy protection in July. She had originally scheduled her monthly income at $1297.30. (Schedule I–Current Income of Individual Debtor.)

| Church offerings | 40.00 |
| Total monthly expenses | $1905.95 |

(Schedule J—Current Expenditures of Individual Debtor.)

The Debtor testified that by January 1, 2005, her rent will have increased to $300.00 and that her landlord will require her to begin paying her own heating fuel costs for propane in an amount not stated on the record. She will also begin paying $15.00 to $20.00 a month for garbage pickup and a small increase in her water bill. Considering these added costs, the Court estimates the Debtor's living expenses have increased by approximately $100.00 per month. Therefore, the Debtor's current monthly expenses, including the student loan payment budgeted on Schedule J, are now estimated to be $2005.95.

In the summers, when the Debtor has approximately two months out of school, she is not gainfully employed. She testified that in the summer she babysits her four grandchildren, including twins who are six and two other children, ages 13 and 10. Throughout the year, she also assists her daughter, who resides in Mississippi and is divorced, transport the four children to visitation periods with their noncustodial father, who apparently lives some distance from the children. The result is that she spends approximately $195.00 every month in transportation costs.

The Debtor stated that she requires a cellular telephone in her classroom because she cannot communicate with the school office through the school's intercom system. She also requires a stationary phone in her home because cell phone reception in that remote area is poor.

## DISCUSSION

The Bankruptcy Code provides that

A discharge under section 727 ... does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8)(2000).

This provision of the Bankruptcy Code permits the discharge of education loan debts guaranteed by a governmental unit only if excepting such debts from discharge would impose an undue hardship on the debtor and the debtor's dependents. The debtor seeking discharge of an educational loan debt has the burden of proving by a preponderance of the evidence that repayment of the debt will impose an undue hardship. *Long v. Educ. Cred. Mgmt. Corp. (In re Long)*, 292 B.R. 635, 638 (8th Cir. BAP 2003)(citing *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363 (10th Cir.1995); *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981); *Standfuss v. U.S. Dept. of Educ. (In re Standfuss)*, 245 B.R. 356, 359 (Bankr.E.D.Mo.2000); *Kopf v. U.S. Dept. of Educ. (In re Kopf)*, 245 B.R. 731, 734 (Bankr.D.Me.2000) (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Clark v. United Student Aid Funds, Inc.*, 240 B.R. 758, 761 (Bankr.W.D.Mo.1999))).

In the Eighth Circuit, the test for undue hardship is a three-pronged analysis of the totality of circumstances unique to the particular bankruptcy case. Courts focus on the debtor's past, current and reasonably reliable future financial resources; the reasonable necessary living

expenses of the debtor and the debtor's dependents; and any other relevant facts and circumstances in the bankruptcy case. *Long v. Educ. Cred. Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir.2003) (citing *In re Andrews*, 661 F.2d at 704; *Andresen v. Nebraska Student Loan Program, Inc., (In re Andresen)*, 232 B.R. 127, 132 (8th Cir. BAP 1999)). Discussing the totality of circumstances analysis, the Eighth Circuit Court of Appeals has stated, "[I]f the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt-while still allowing for a minimal standard of living-then the debt should not be discharged." *In re Long*, 322 F.3d at 554–55.

In the instant case, SLGF argues that the Debtor's delay in repaying the loan has resulted in significant interest accrual that has almost tripled the original debt. The creditor points out that the Debtor is in reasonably good health, has no dependents, has secured the teaching position for which she was trained, and does not work in the summers when she is not teaching school. Further, SLGF states that the student loan debt is 72 percent of the total unsecured debt.

Chiefly, SLGF argues that the Debtor may avail herself of the income contingent repayment plan offered by the William D. Ford Direct Loan Consolidation program. Under this plan, the student loan debtor pays 20 percent of the difference between her adjusted gross income and the poverty level for her family size or the amount the debtor would pay if the debt were repaid in 12 years, whichever is less. *Pennsylvania Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 495 n. 3 (9th Cir. BAP 2002). SLGF contends that the Debtor can afford to repay her student loan under the first alternative.

As previously stated, after 25 years of payments, the remainder of the loan will be forgiven. SLGF asserts that if the Debtor obtained a summer job, even one paying minimum wage, she could easily afford to pay under the income contingent repayment plan. However, SLGF concedes in its post-trial brief that because the Debtor received a salary raise of $6828.00 after she filed for bankruptcy protection, SLGF's estimate of a $136.33 monthly payment under the income contingent repayment plan is now too low. (SLGF Brief at 3.) The parties have not stipulated to a higher estimate of monthly payment under the plan that takes into account the Debtor's higher salary.

The Debtor argues that, even with her raise, her living expenses exceed her current income and that it is unlikely that her financial resources will significantly increase in the foreseeable future. For this reason, requiring her to repay her student loan will impose an undue hardship.

An examination of the Debtor's past, present, and future financial resources reveals that after graduation in 1991, the Debtor was unable to secure a teaching position and spent eight years working at minimum wage jobs. This circumstance affected her ability to repay the student loan debt during this period. When the Debtor did find a teaching job, it was in a small school district in an impoverished part of the state where teachers' salaries were so low that paying the burgeoning student loan debt remained a difficulty.

Although the Debtor has received a significant raise since she filed her bankruptcy petition, she can expect only $500.00 annual raises in the future. These paltry raises will probably be absorbed by inevitable increases in the cost of living. Therefore, in terms of buying power, the Debtor's current salary of $30,200.00 will remain stagnant until she retires.

As SLGF points out, the Debtor has her summers free and could earn extra money with part time or full time summer employment for approximately two months every year. However, the Debtor is limited in the types of jobs she can perform because she cannot stand or sit for extended periods. This limitation precludes employment in the service sector where jobs in retail sales, food service, and housekeeping are usually readily available. In fact, because of her chronic back problems and diminished lung capacity, the Debtor would probably not be able to perform any physically challenging work.

The Debtor could, however, perform clerical duties as a temporary worker; she could babysit older children as she has for her grandchildren in summers past; and she could give private or group art lessons. Taking into account this potential for extra income in the summers, the Court imputes another $100.00 to the Debtor's net monthly earnings, bringing her net monthly income to $1543.00. This figure is the maximum the Debtor can expect to earn in the foreseeable future. In reaching this conclusion, the Court has taken into account the fact that public school teachers in the state of Arkansas are historically among the lowest paid of professions requiring a college degree. Unfortunately, this circumstance is not likely to change in the future.

The Court must also decide whether the Debtor has minimized her reasonable necessary living expenses. With the exception of the Debtor's transportation costs of $195.00, her expenses are reasonable and even minimal. Even at the higher rate of $300.00 a month, her rent is very low. She does not spend money on gifts or television and internet service, and her budget for

recreation and entertainment is a spare $5.00 a month. The Court credits her testimony that she needs a cell phone at school to communicate with the school office and that this is a necessary cost associated with her employment.

However, the expense of driving the Debtor's grandchildren to their visitation with their noncustodial father should not be incurred to the detriment of the Debtor's student loan creditors. In evaluating this expense, the Court does note that at least part of the $195.00 a month in transportation costs probably results from maintaining an older, high mileage vehicle. Furthermore, living in a rural area without benefit of public transportation and at a distance from stores, work, and other venues necessarily results in a greater consumption of gasoline, also contributing to her transportation expense. Taking these circumstances into consideration, the Court will adjust the Debtor's transportation expenses downward by $50.00 to account for the Debtor's unnecessary costs associated with transporting her grandchildren. Therefore, the Debtor's current reasonable necessary expenses are determined to be $1955.95.

Subtracting the Debtor's necessary expenses of $1955.95 from her net monthly income of $1543.00 yields a negative $412.95. Obviously, these figures demonstrate that the Debtor is unable to make the regular student loan payment of $564.09 [2] without undue hardship. SLGF does not argue otherwise but instead contends that there is still room in the Debtor's budget for a lower student loan payment under the income contingent repayment plan.

---

**2.** The Debtor did not testify at trial as to the exact amount of the student loan payment that would be due each month under the original terms of the loan agreement, but she budgeted $564.09 as the monthly student loan payment in Schedule J.

It is true that if the regular student loan payment of $564.09 is eliminated from the Debtor's budget, the Debtor has an excess of $151.14 a month. This excess would cover the $136.33 per month that SLGF had previously estimated would have been due under the income contingent repayment plan at the time of the Debtor's bankruptcy filing. However, as SLGF concedes, the Debtor would now owe more than $136.33 per month under the plan formula because of the Debtor's salary raise this school year. *See, e.g., Warner v. Educ. Cred. Mgmt. Corp. (In re Warner)*, 296 B.R. 501, 503–04 (Bankr.D.Neb.2003) (Debtor with two dependent children was earning $26,000.00 a year and would be required to pay $191.00 per month under ICRP on debt of $57,000.00); *In re Birrane*, 287 B.R. at 490–500 (Debtor was earning $21,155.00 a year and would be required to pay $141.00 a month under ICRP to defray $57,092.00 in student loan debt).

Another circumstance relevant to this analysis is that the Debtor is driving an older model automobile with 182,000 miles on the odometer. Because she lives in a rural area, the Debtor must own and maintain her own mode of transportation, and at some point in the near future the Debtor will have to replace her vehicle. A car payment will totally eliminate any excess funds now in the budget and will also very likely require further belt-tightening on the Debtor's part. The financial reality is that the Debtor will have no excess income to apply to the student loan debt, even if paid at a reduced rate available through the income contingent repayment plan. The Court concludes that the Debtor's future financial resources will not sufficiently cover any student loan payment and also allow for the Debtor's minimal standard of living.

Additionally, in considering whether payment under the income contingent repayment plan would create an undue hardship, the Court observes that even if the Debtor were somehow able to make the payments required under the formula, she would probably still owe most or all of the principal of $69,794.17 in 25 years when the loan is forgiven and she is 76 years old. Courts have found that forgiveness of the loan would be a taxable event that could result in a "tax liability which would likely be non-dischargeable in bankruptcy." *Limkemann v. U.S. Dept. of Educ. (In re Limkemann)*, 314 B.R. 190, 196 (Bankr. N.D.Iowa 2004) (citing *In re Strand*, 298 B.R. 367, 376–77 (Bankr.D.Minn.2003); *In re Thomsen*, 234 B.R. 506, 512–14 (Bankr. D.Mont.1999); *In re Berscheid*, 309 B.R. 5, 13 (Bankr.D.Minn.2002)). Therefore, the Debtor, at 76 years of age, would be taxed on substantial phantom income while existing on a retiree's reduced financial resources.[3]

This circumstance would impose an undue hardship on the Debtor if she were required to participate in the income contingent repayment plan. While the Court believes that the income contingent repayment plan is an alternative that would not impose an undue hardship in many cases, it is not an option for this Debtor. She is too close to retirement age, has too many health problems, and is employed in a field where she has no chance of making a substantially higher salary in the future.

---

**3.** For example, if the Debtor paid $200.00 a month under the income contingent repayment plan for the next 25 years and the principal of $69,000.00 accrued interest at a rate of 8.25 percent, the debt would continue to grow until after 25 years the Debtor would owe $340,792.60. Even assuming a slightly higher monthly payment and a lower interest rate, it is unlikely the Debtor would ever reduce, much less retire, the original principal indebtedness of $69,000.00.

See *In re Long*, 292 B.R. at 639 (remarking that 39–year–old debtor was able to make student loan payments under ICRP without undue hardship and would complete payments before she reached retirement age).

In support of its argument that repaying the loan would not constitute undue hardship, SLGF implies that the Debtor, through her delay in making full monthly payments, was responsible for the debt's increase from $25,000.00 to $69,000.00. SLGF points out that the Debtor and her husband owned as many as eight horses during the time when she was deferring or reducing payments to her student loan creditor. However, there was not enough evidence at trial as to the expense associated with the acquisition and care of the horses for the Court to draw the inference that the Debtor chose to indulge in an expensive pastime rather than make her regular student loan payments. The Court credits the Debtor's explanation that after graduation, she was unable to find employment that paid enough for her to defray the student loan debt.

█ SLGF also emphasizes that the Debtor has no dependents and that her student loan debt is 72 percent of the total unsecured debt. These are but two factors among many to be weighed in the totality of the circumstances analysis, and neither is determinative in this case. *See, e.g., Ford v. Student Loan Guarantee Found. (In re Ford)*, 269 B.R. 673, 677 (8th Cir. BAP 2001) (asserting that debtor's age and physical condition weighed heavily toward discharging student loan, while debtor's failure to pursue deferments or opt for ICRP did not support a finding of nondischargeability).

### CONCLUSION

The Debtor does not and will not have the financial resources to make regular or reduced payments on her student loan and still maintain a minimal standard of living. To except this debt from discharge will impose an undue hardship on the Debtor, and for this reason the debt owed to SLGF is determined to be dischargeable.

IT IS SO ORDERED.