In re Tawandalaia NEWMAN, Debtor.

Tawandalaia Newman, Plaintiff,

v.

Education Credit Management Corp., Defendant.

Bankruptcy No. 00–30784F.
Adversary No. 01–0271.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 3, 2002.

---

Henry J. Sommer, Miller, Frank & Miller, Philadelphia, PA, for Debtor.

Arthur P. Liebersohn, Philadelphia, PA, trustee.

## MEMORANDUM

BRUCE I. FOX, Chief Judge.

Presently before me are cross-motions for summary judgment.

Plaintiff Tawandalaia M. Newman filed an adversary proceeding seeking a determination that her student loan obligations to defendant Education Credit Management Corp. are dischargeable pursuant to 11 U.S.C. § 523(a)(8). The defendant submitted an answer in opposition and then filed a motion for summary judgment relying upon the plaintiff's answers to interrogatories and certain documents. The plaintiff countered with her own motion for summary judgment which relies primarily upon two affidavits.

For the following reasons, I conclude that neither motion may be granted because there remain material facts in dispute.

### I.

The parties have submitted a joint pretrial statement pursuant to Local Bankr. Rule 7016–1 which sets forth the following undisputed facts:

Plaintiff Tawandalaia Newman and Defendant ECMC agree to the following facts:

1. Plaintiff currently owes $19,281.72 in federally secured student loans to the Educational Credit Management Corporation.

2. Plaintiff incurred these loans to attend Philadelphia College of Pharmacy and Science, located 600 South 43rd Street, Philadelphia, PA to pursue a degree in Pharmacology.

Plaintiff did not complete this program.

3. Plaintiff s[sic] current total gross monthly income is approximately $1517.40, which consists of approximately $680 in earnings from the Insurance Society of Philadelphia, $558,40 in Supplemental Security Income Disability Benefits for her son DaiQuan Newman, and $279 in Food Stamps. This is below the federal poverty level set by the Department of Health and Human Services.

4. Plaintiff's housing expenses include $420 in mortgage payments, $25 for property taxes, approximately $30 for gas, $50 for electric, $45 for water, and $65 for telephone service. She spends approximately $600 per month on food, $150 on clothing, $60 on laundry and cleaning expenses, $160 for gas and tokens, $75 for medications and vitamins, $25 for haircuts, $100 for school supplies, toiletries and paper products, $17 for life insurance, and $75 for internet, cable and recreation expenses.

Approximately $100 in federal and state taxes each month are deducted from her paycheck. Plaintiff is eligible for the earned income tax credit, and any federal withholding would be returned to her, as part of her credit. She also pays about $60 per month in previous credit card bills.

5. Plaintiff's average expenses total $2057, and she is currently not making payments on her second mortgage with The Money Store.

6. Plaintiff has five children ages 4, 7, 9, 13 and 14. DaiQuan Newman, her seven-year-old, suffers from Denny's–Drash Syndrome and kidney failure. In 1999 he received a

kidney transplant. As noted above, DaiQuan Newman receives Supplemental Security Income benefits.

7. Plaintiff currently receives food stamps in the amount of $279. As her income increases, this amount is reduced.

8. If her income, exclusive of DaiQuan Newman's Supplemental Security Income benefits, increases to $2249 per month, these SSI benefits will be reduced. These payments would terminate if Plaintiff's income grew to $3,363.80 per month.

9. If her income increases above the poverty level, her Medical Assistance benefits, which currently cover medical expenses for Plaintiff and four of her children, will be reduced.

10. Plaintiff faced foreclosure on her home in 1999 because she was in default on her mortgage payments. She took out a loan through the Homeowner's Emergency Mortgage Assistance Program (HEMAP) of the Pennsylvania Housing Finance Agency (PHFA) to prevent this foreclosure. Her mortgage payments to PHFA are included in her enumerated expenses above.

11. Once Plaintiff received a HEMAP loan, she was advised to file a chapter 7 bankruptcy to deal with her unsecured debts. Other than her student loans, she had over $14,000 in unsecured debts. At least one creditor had obtained a judgment against her.

12. Plaintiff's sister, Donja Seawell, is a co-owner of Plaintiff s[sic] home and a co-debtor on the mortgage with Fairbanks Capital. This house was deeded to Plaintiff and Ms. Seawell by their parents.

13. Plaintiff s[sic] ex-husband, Anthony Newman, is a co-debtor on the loan with the [sic] Money Store.

14. Plaintiff has not pursued her insurance license because she does not have the money to pay for the required continuing education credits.

15. Plaintiff has changed jobs several times to attempt to get jobs with better wages and benefits. When she was not working permanent, full-time positions, Plaintiff worked at temporary or part-time jobs. In order to return to full-time work, she would need to make appropriate child care arrangements for her four year-old, as well as after-school care for her seven and nine year-olds.

16. In the past ten years, Plaintiff has not earned more than $11.64 [sic], which she earned in a four-month temporary position at the Chester Post Office. Plaintiff did not obtain permanent employment at the post office after her temporary position was completed.

17. Plaintiff has been diagnosed with fibromyalgia.

18. Plaintiff applied for and received many deferments and forbearance periods for her student loans, and continually reapplied for these periods in an attempt to keep her loans out of default. Her income has not increased significantly since the time these deferments were granted. She has been told that she is not eligible for more deferments. She has not made payments since she worked at the Post Office.

Joint Pretrial Statement, Part II.

II.

A.

11 U.S.C. § 523(a)(8) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

There is no dispute that the loan obligations held by the defendant in this proceeding are student loans which fall within the scope of section 523(a)(8). Accordingly, these obligations will not be dischargeable unless their repayment will impose "an undue hardship on the debtor and the debtor's dependents."

█ In *In re Faish,* 72 F.3d 298 (3d Cir.1995), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996), the Third Circuit Court of Appeals interpreted section 523(a)(8) and the phrase "undue hardship." The Circuit Court instructed that the tripartite test set forth in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2nd Cir.1987) (per curiam) should govern in this circuit as well. Under the *Brunner* interpretation of section 523(a)(8), a debtor demonstrates "undue hardship" only by demonstrating:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*In re Faish,* 72 F.3d at 304–05.

█ Further, the Third Circuit explained that the debtor has the burden of persuasion on all three components of the undue hardship test and that all these elements must be proven for the student loan obligation to be rendered dischargeable:

*Brunner* now provides the definitive, exclusive authority that bankruptcy courts [in this circuit] must utilize to determine whether the "undue hardship" exception applies. Student-loan debtors have the burden of establishing each element of the *Brunner* test. All three elements must be satisfied individually before a discharge can be granted. If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability.... Equitable concerns or other extraneous factors not contemplated by the *Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability.

*Id.,* 72 F.3d at 306.

The Third Circuit recently reaffirmed this interpretation of the phrase "undue hardship" used in section 523(a)(8) in *In re Brightful,* 267 F.3d 324 (3d Cir.2001).

### B.

Federal Rule of Bankruptcy Procedure 7056 incorporates Fed.R.Civ.P. 56 into bankruptcy adversary proceedings. The purpose of summary judgment is to avoid the expense and delay of an unnecessary trial because no material facts are in dispute and one of parties is entitled to prevail on the merits. *See, e.g., Goodman v.*

*Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In general, the standard for entry of summary judgment under Rule 56 is well established. As the Third Circuit Court of Appeals explained:

> Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact.... In order to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). In essence, the non-moving party must demonstrate a dispute over facts that might affect the outcome of the suit. *Id.* Moreover, in reviewing the record, we must give the non-moving party the benefit of all reasonable inferences....

*Hampton v. Borough of Tinton Falls Police Dept.,* 98 F.3d 107, 112 (3d Cir.1996).

The application of these general principles is affected by the allocation of the evidentiary burden of persuasion were the dispute to proceed to trial. That is, a trial court's approach to summary judgment is dependent upon whether the party seeking summary judgment would have the burden of persuasion at trial. *See generally* Coquellette, *et al.* 11 *Moore's Federal Practice 3d,* §§ 56.13[1], 56.13[3] (1999). This approach was well summarized in *Adams v. Consolidated Rail Corp.,* 1994 WL 383633, *1–*2 (E.D.Pa.1994):

> The Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317[, 106 S.Ct. 2548, 91 L.Ed.2d 265] (1986). The Court held that where the movant is the defendant, or the party without the burden of proof on the underlying claim, the movant still has the initial burden of showing the court the absence of a genuine issue of material fact, but that this does not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Id.* at 323[, 106 S.Ct. 2548]. In contrast, where, as here, "the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). To sustain its initial burden under such circumstances, the movant must:

> > "support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."

> *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993).... If the movant makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact....

(citations omitted); *accord In re White,* 243 B.R. 498, 501 n. 4 (Bankr.N.D.Ala. 1999).

Thus, in order for defendant Education Credit Management Corp. to prevail on summary judgment in this proceeding under section 523(a)(8), it must demonstrate that material facts are not in dispute and that the debtor will be unable to meet her

burden of proof on one or more elements of the three-part *Brunner* standard.

The debtor has a heavier burden to prevail upon her cross-motion for summary judgment. She must demonstrate that there are no material facts in dispute and that for each of the three *Brunner* elements the undisputed evidence "is so powerful that no reasonable jury would be free to disbelieve it." Coquellette, *et al.* 11 *Moore's Federal Practice 3d,* §§ 56.13[1] at 56–138 (1999).

In both instances, all reasonable factual inferences are construed in a light most favorable to the non-moving party.

### III.

I turn first to the summary judgment motion filed by the defendant in this proceeding.

In its motion, Education Credit Management Corp. seems to accept that summary judgment in not appropriate on the first of the three *Brunner* factors. That is, at least material facts are in dispute concerning the present ability of the debtor to maintain some minimal standard of living for herself and her five children were she required to repay her student loan. The defendant does maintain, however, that the debtor will be unable to prevail at trial on the second and third factors. It contends that the debtor cannot prove: that her present financial state of affairs is likely to persist for a significant portion of the repayment period for student loans; and that the debtor has made good faith efforts to repay her student loans.

As to the second factor, Education Credit Management Corp. argues that the debtor's financial condition is likely to improve because: some of her children will reach eighteen and no longer be dependent upon her; some of her future expenses can or will be reduced by payments from co-obligors; and the debtor can or will obtain full-time employment without a concomitant increase in expenses.

As to the third factor, the defendant focuses upon the existence of the "William D. Ford Federal Direct Loan Program," *see* 34 C.F.R. Part 685. Under this program an individual holding certain types of student loans may consolidate those loans into one direct loan. *See* 34 C.F.R. § 102; *see also In re Wallace,* 259 B.R. 170, 174 (C.D.Cal.2000). The borrower may then choose among different repayment options. *See* 34 C.F.R. § 685.208.

The option which the defendant in this proceeding emphasizes is the one styled the "income contingent repayment plan." *See* 34 C.F.R. § 685.208(f). One court recently summarized a few aspects of this repayment option:

> [A] borrower may qualify for an Income Contingent Repayment Plan, where the amount of the required monthly payment is recalculated yearly based on the borrower's Adjusted Gross Income, family size and the "poverty guidelines" promulgated by the United States Department of Health and Human Services. The repayment period covers a maximum of 300 months. The amount of payments are dependent on the borrower's income and payment may not be required at all during times when the borrower has little income. The balance remaining after the 300–month period is deemed forgiven.

*In re England,* 264 B.R. 38, 44 (Bankr.D.Idaho 2001).

To qualify for this income contingent repayment program, an individual needs to formally apply, which application provides for an authorization for the IRS to release tax information to Secretary of Education. *See In re Thomsen,* 234 B.R. 506, 509 (Bankr.D.Mont.1999). The borrower's monthly payments are then determined

based upon her income (with periodic reviews). *See id.* Interest on the consolidated loan accrues at a rate established in the regulations, and if the borrower's payments are insufficient to cover the accruing interest at least some of it will be capitalized. At the end of twenty-five years, the unpaid balance may be "discharged" by the Secretary, with this discharge considered by the IRS as a taxable event.

As one court explained:

The description of the "income contingent" plan contained in the materials states:

The Income Contingent Repayment Plan allows you to repay your loan as a percentage of your income. In general, the amount you repay depends on the amount you borrowed and begins at 4 percent of your income for loans of $1,000 or less. The percentage of income increases at the rate of 0.2 percent for each additional $1,000 borrowed, up to a maximum of 15 percent for loans of $56,000 or more. However, your monthly payment will never be more than 20 percent of your discretionary income. Discretionary income is your federal adjusted gross income *minus* the poverty level for your family size. If the monthly income repayment is calculated to be less than $15.00, no payment is required."

" .... [I]t's possible you won't make payments large enough to pay off your loan in 25 years. If this happens, after 25 years (excluding periods of deferment, forbearance, [etc.] ), the unpaid amount of your loan will be discharged, and the amount discharged will be considered taxable income."

*In re Wallace,* 259 B.R. at 175.

The defendant in this proceeding notes that the debtor's present income is less than the poverty guidelines issued by the Department of Health and Human Services. Thus, if the debtor were to apply for the "income contingent repayment plan," she would not need at present to make any monthly student loan repayments under this program. The availability of this option and the debtor's refusal to seek it require, in the view of the defendant, a finding that the plaintiff is not acting in good faith toward repayment of her student loans.

Despite the defendant's contentions, upon my review of the debtor's affidavit in response to the defendant's instant summary judgment motion, and given that all reasonable inferences are construed in plaintiff's favor, I conclude that there are material facts in dispute. Many of them concern the debtor's likely future financial circumstances. For example, she challenges (on a number of bases) the defendant's assertion that her future expenses can be reduced. She also avers that her co-obligors either cannot or should not provide assistance in reducing her expenses.

■ In addition, while consideration of the debtor's repayment options is one factor that a court may consider in determining "undue hardship" under the totality of the circumstances, I am unaware of any decision which holds that the availability of the William D. Ford Federal Direct Loan Program to a debtor—including its "income contingent repayment plan" option— by itself requires a finding that it would not be an "undue hardship" to repay the student loan obligation.

For example, in *In re Standfuss,* 245 B.R. 356 (Bankr.E.D.Mo.2000), the court concluded that it would not be an undue hardship for the debtors to repay their educational loans. It did not, however,

simply rely upon the federal Direct Loan Program:

> Although it is unlikely that the Debtors' income will increase substantially over the repayment period of the loan, the evidence and testimony support a finding that the Debtors' expenses will decrease in the future. Two of the Debtors' dependents will reach the age of majority within five years. Based on the Defendant's representations that the repayment period for the loan is twenty-five years, and considering the flexibility of the Income Contingent Repayment Plan selected by the Debtors, the absence of the dependents' expenses in the next five years will have a positive effect on the Debtors' ability to repay their loan.

> The Court has also considered the equity of imposing the determination of nondischargeability on Mr. Standfuss, notwithstanding the representation that substantially all of the consolidated loan balance represents student loans to Mrs. Standfuss. The Debtors' joint obligation to repay both student loan debts was the result of the Federal Direct Consolidation Loan agreement that had been entered into after a default. Thereafter, the Debtors requested and were granted a general forbearance for several periods prior to the commencement of this case. There is nothing in the record to suggest that the consolidation that resulted in the joint obligation was involuntary or without the Debtors' understanding of the process.

> The Court has carefully considered the totality of circumstances of the Debtors' case, and concludes the record supports a finding that the Debtors are able to make some payment on their student loans and maintain a minimal standard of living for themselves and their dependents.

*Id.,* 245 B.R. at 361; *see In re England,* 264 B.R. at 50 (the debtors' expenditure of a sizable tax refund upon non-essentials, the failure of one debtor to seek employment, plus their failure to "explore alternative repayment programs, such as the Income Contingent Repayment Plan" together yield the conclusion that they have failed to make a good faith effort to repay their student loans).

Thus, in *In re Wallace,* the District Court reversed a summary judgment decision entered in favor of the debtor under section 523(a)(8). It did not, though, enter judgment in favor of the defendant United States Department of Education. Instead, it remanded the proceeding so the bankruptcy court could permit the introduction of evidence on a variety of disputed factual issues, including "the impact of the 'income contingent' program on [the debtor's] future ability to pay...." *Id.,* 259 B.R. at 182.

Moreover, in *In re Thomsen,* the bankruptcy court concluded that the debtors' student loan obligations were dischargeable as an undue hardship, despite their failure to apply for the Income Contingent Repayment Plan. It stated:

> Given Debtors' current station in life, it is doubtful Debtors will have the wherewithal to repay the student loan obligations during their lifetime. Thus, the Court concludes both Debtors have satisfied the second prong of the Brunner test. That conclusion is not changed, as Defendant urges, because Debtors' loans would be discharged after 25 years. In that event the unpaid amount, together with the interest which will have accrued in 25 years, would be discharged by the Defendant and treated as taxable income. In other words, the Debtors would simply exchange one huge nondischargeable debt for educational loans for another in the form of nondischargeable

income taxes. *See* 11 U.S.C. § 523(a)(1). Under these circumstances of clear and undue hardship, this Court deems the better result is to discharge the Debtors' educational loan debt, which they have no prospect of ever repaying, now and give the Debtors the benefit of a fresh start.

*Id.,* 234 B.R. at 513–14.

Finally, in the very recent decision *In re Ford,* 269 B.R. 673 (8th Cir. BAP 2001), the appellate court concluded that the availability of "forbearance or deferment options [are] ... merely one factor in many that weigh on the Court's totality of the circumstances inquiry." *Id.,* 269 B.R. at 677. "[M]erely hoping that the Debtor might have greater income at some point in the next 25 years to permit her to make payments on her student loans" will not be sufficient to render the obligation non-dischargeable when the evidence demonstrates the unlikelihood that the debtor's present financial circumstances will improve. *Id.,* 269 B.R. at 677–78.

Accordingly, I cannot conclude that there are no material facts in dispute in this proceeding and that the defendant is entitled to prevail as a matter of law.

## IV.

■ The debtor's counter-motion for summary judgment affirms, in sum, that she and her family are presently impoverished, will be so for the foreseeable future and the debtor will be unable to alter that result. She further avers that she has tried in good faith to repay these student loans but cannot afford to do so. The debtor then reasons that the defendant has the duty to counter these declarations with

contrary evidence. It having not done so, the debtor maintains that she must prevail on summary judgment.

■ The debtor's contentions misconstrue Rule 56 to some degree. As the party with the ultimate burden of persuasion on the issue of "undue hardship," she must demonstrate that no reasonable fact finder could possibly rule in favor of the defendant on any of the three elements of the Brunner test. This is a difficult standard, which explains why few courts have granted a debtor relief under section 523(a)(8) based upon a summary judgment finding of "undue hardship." *See generally In re Saburah,* 136 B.R. 246, 254–55 (Bankr.C.D.Cal.1992) (material questions of fact were in dispute on the issue of undue hardship thus precluding resolution by summary judgment).

Here, the defendant may question and a reasonable fact finder may consider the plaintiff's present expenses and likely future expenses,[1] her present income and likely future income,[2] the continued amount and availability of various income supplements (*e.g.,* child support), and her present and future health. *See also In re Brightful,* 267 F.3d at 328 ("We note that this inquiry is made difficult by the fact that the Bankruptcy Court made no factual findings regarding Brightful's expenses. Brightful did submit some information and testified briefly regarding her expenses, but PHEAA contends that much of this information is inaccurate, incomplete and undocumented"). In addition, a reasonable fact finder may consider the debtor's age (the record is silent on this point), *see In re Ford,* 269 B.R. at 677, as well as the

---

1. The joint pretrial statement provides that the debtor will demonstrate present expenses including "$75 for internet, cable and recreational expenses" and "about $60.00 per month in previous credit card bills."

2. She formerly earned more than $11.00 per hour.

availability of the income contingent repayment option. *See In re Wallace*, 259 B.R. at 185–86 (summary judgment in favor of debtor reversed so bankruptcy court could make further factual findings on the question of good faith).

Accordingly, I cannot presently conclude that the admissions in the pleadings and in averments found in the affidavits supplied by the plaintiff would require any reasonable fact finder to conclude that she meets all three elements of the *Brunner* test for undue hardship.

Accordingly, the cross-motion for summary judgment must be denied.

### ORDER

AND NOW, this 7th day of January, 2002, for the reasons stated in the accompanying memorandum, it is hereby ordered that defendant's motion for summary judgment is denied. It is further ordered that plaintiff's cross-motion for summary judgment is also denied.

It is also ordered that the above-captioned adversary proceeding is transferred to the docket of Judge Cosetti for trial and resolution in the Philadelphia vicinage of the Eastern District of Pennsylvania in consideration of the order from the Chief Judge of the Third Circuit Court of Appeals designating and assigning the Honorable Joseph L. Cosetti, Bankruptcy Judge of the Western District of Pennsylvania, to hold court in this judicial district for a temporary period.