**In re Lorna ALLEN, Debtor.**

**Lorna Allen, Plaintiff,**

**v.**

**American Education Services, et al., Defendants.**

**Bankruptcy No. 04–29038–MBM.**
**Adversary No. 04–2870–MBM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 3, 2005.

Lawrence H. Fisher, Akman & Associates, P.C., Canonsburg, PA, for Lorna Allen.

John P. Neblett, Harrisburg, PA, for Educational Credit Management Corporation.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Chief Judge.

**AND NOW,** this **3rd day** of **May, 2005,** upon consideration of (a) the adversary

complaint filed by Lorna Allen, the instant debtor (hereafter "the Debtor"), wherein the Debtor seeks a determination by the Court that (i) to except from her Chapter 7 discharge her $47,140 pre-petition student loan debt owed to American Educational Services (hereafter "AES") will impose an undue hardship on her, and (ii) said student loan debt is thus discharged pursuant to 11 U.S.C. § 727 rather than is nondischargeable pursuant to 11 U.S.C. § 523(a)(8), and (b) the parties' dueling summary judgment motions;

and it appearing to the Court that Educational Credit Management Corporation (hereafter "ECMC") is now the real party defendant given that, according to ECMC, it has acquired from AES all right, title and interest in the student loan debt that the Debtor now seeks to have discharged;

and subsequent to notice and a hearing on April 27, 2005, regarding both summary judgment motions,

it is hereby **ORDERED, ADJUDGED, AND DECREED** that the summary judgment motions of each party are **DENIED WITH PREJUDICE**.

The rationale for the Court's decision is set forth below.

## I.

■ 11 U.S.C. § 523(a)(8), which statutory provision controls whether the Debtor's student loan debt to ECMC is excepted from her Chapter 7 discharge, provides, in pertinent part, that:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for an educational ... loan made, insured or guar-

anteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution ..., unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C.A. § 523(a)(8) (West 2004). Because "undue hardship" is not defined in the Bankruptcy Code, courts have developed various tests to determine whether such hardship is present. This Court, however, is constrained by the Third Circuit Court of Appeals' directive in *In re Faish,* 72 F.3d 298 (3rd Cir.1995), wherein the Third Circuit held that the three-part test for "undue hardship" set forth in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2nd Cir.1987) (per curiam),[1] "must now be applied by bankruptcy courts within the Third Circuit." *Faish,* 72 F.3d at 306. The Second Circuit in *Brunner* set forth its three-part test for "undue hardship" as follows:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396. Expanding upon the foregoing, the Third Circuit held in *Faish* that:

1. The three-part test set forth by the Second Circuit in its decision in *Brunner* originated in the district court decision that was ultimately affirmed by the Second Circuit. *See In re Brunner,* 46 B.R. 752, 756 (S.D.N.Y.1985),

*aff'd,* 831 F.2d at 396. The Second Circuit, as part of its rationale for affirming the district court decision, adopted the aforementioned three-part test. *See Brunner,* 831 F.2d at 396.

[s]tudent loan debtors have the burden of establishing each element of the *Brunner* test. All three elements must be satisfied individually before a discharge can be granted. If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability.

*Faish,* 72 F.3d at 306. The standard of proof by which a debtor must establish each element of the *Brunner* test is by a preponderance of the evidence. *See In re Brightful,* 267 F.3d 324, 327 (3rd Cir.2001).

## II.

Addressing first ECMC's summary judgment motion, ECMC confines its motion to the third prong of the *Brunner/Faish* test, namely whether the Debtor has made a good faith effort to repay her student loan debt. ECMC argues, in particular, that the Debtor's failure to attempt to repay even a small portion of her student loan debt via an available administrative remedy, namely the Income Contingent Repayment Plan under the William D. Ford Direct Loan Program (hereafter "WDF ICRP"), establishes, as a matter of law, that the Debtor has not made a good faith effort to repay her student loan debt. As set forth below, the Court rejects such reasoning by ECMC.

■ As an initial matter, the Court agrees with ECMC that whether a debtor has attempted to obtain forbearances and deferments regarding, or has attempted to consolidate, refinance, or otherwise restructure, student loan debt is one factor that generally must be considered when making a determination as to the good faith of a debtor's repayment efforts. *See infra* pp. 282–83. However, such factor "is but one of the factors for the Court to consider in determining whether excepting the debt from discharge would impose an

undue hardship on the Debtor[, that is such factor] ... is but one factor to weigh in making the decision and is not itself determinative." *In re Fahrer,* 308 B.R. 27, 35 (Bankr.W.D.Mo.2004); *see also In re Newman,* 304 B.R. 188, 195 (Bankr. E.D.Pa.2002) (making the same observation with respect to the WDF ICRP in particular). Therefore, even when a debtor's failure to restructure his or her student loan debt is indicative of a failure on such debtor's part to make good faith efforts to repay such debt, such failure to so restructure, by itself, is not sufficient to conclusively establish the lack of such good faith.

■ Furthermore, it is not necessarily the case that each and every debtor will benefit from, in particular, the WDF ICRP—indeed, some debtors would most likely suffer were they to take advantage of the WDF ICRP—notwithstanding that such payment plan (a) undoubtedly operates to reduce a debtor's monthly payment on his or her student loan debt, and (b) potentially may result in the ultimate discharge of a substantial portion of such student loan debt. *See, e.g., In re Berscheid,* 309 B.R. 5, 13 (Bankr.D.Minn.2002) (holding that the WDF ICRP "is a program which dooms a debtor to perpetual indebtedness for student loan obligations" and is, thus, "not a wise move"); *In re Williams,* 301 B.R. 62, 79 (Bankr.N.D.Cal. 2003); *Fahrer,* 308 B.R. at 35–36; *Newman,* 304 B.R. at 196–197 (citing *In re Thomsen,* 234 B.R. 506, 513–514 (Bankr. D.Mont.1999)); *In re Parker,* 322 B.R. 856, 862–63 (Bankr.E.D.Ark.2005). Such is the case given that a debtor, by entering into a repayment plan under the WDF ICRP, may potentially incur, after the 25–year repayment term called for under the WDF ICRP, a substantial, ultimately nondischargeable, tax obligation as a result of the discharge of that portion of his or her

student loan debt that ultimately is not repaid under such repayment plan. *See Williams,* 301 B.R. at 71 & 79; *Fahrer,* 308 B.R. at 35–36; *Newman,* 304 B.R. at 195–197 (citing *Thomsen,* 234 B.R. at 513–514); *Parker,* 322 B.R. at 862–63. Such potential for disastrous tax consequences is particularly acute with respect to student loan debtors who are at or near retirement age when they commence a payment plan under the WDF ICRP; such is the case given that such debtors have relatively little time left to substantially pay down their debt, which means that such debtors will likely have a substantial amount of debt that will then be discharged, with a consequentially large, nondischargeable tax obligation. *See Parker,* 322 B.R. at 862–63; *Fahrer,* 308 B.R. at 35–36. Therefore, that a debtor has not taken advantage of the WDF ICRP could not, as a matter of law, necessarily serve to indicate, let alone establish, that a debtor has failed to make a good faith effort to repay his or her student loan debt. *See, e.g., Williams,* 301 B.R. at 79; *Newman,* 304 B.R. at 195.

■ With respect to the Debtor in particular, that she has failed to take advantage of the WDF ICRP does not, in any way, establish, indeed does not even indicate, that she has failed to make a good faith effort to repay ECMC notwithstanding that such payment plan would operate to substantially reduce her monthly payment on her student loan debt. The Court so rules because (a) the Debtor is approximately 60 years old at the present time, (b) the Debtor, given the proposed monthly payment figure that has been quoted to her by ECMC under the WDF ICRP, would not have paid down any of the presently outstanding $47,140 principal on her student loan debt by the end of the 25–year repayment period, at which time she would be roughly 85 years old—in fact,

such balance would have grown significantly during such period, (c) the Debtor, were she to take advantage of the WDF ICRP, would likely incur a substantial, nondischargeable tax obligation, and (c) the Debtor would thus most likely be harmed were she to take advantage of the WDF ICRP.

Therefore, that the Debtor has failed to take advantage of the WDF ICRP dictates neither a finding that she has failed to make a good faith effort to repay her student loan debt to ECMC nor, consequently, a holding that her student loan debt must be excepted from discharge pursuant to § 523(a)(8). Accordingly, ECMC's summary judgment motion must be denied with prejudice.

### III.

■ As for the Debtor's summary judgment motion, ECMC argues, and the Court agrees notwithstanding its denial of ECMC's summary judgment motion, that a genuine dispute exists as to whether the Debtor has made a good faith effort to repay her student loan debt.

■ "The good faith inquiry is to be guided by the understanding that 'undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *Faish,* 72 F.3d at 305. "'Good faith is [thus] measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses.' ... 'Good faith is also measured by a debtor's effort—or lack thereof—to negotiate a repayment plan.'" *In re Marks,* 2003 WL 22004844 at *5 (N.D.Cal.2003) (quoting *In re Birrane,* 287 B.R. 490, 499 (9th Cir. BAP 2002)); *see also Pelliccia v. U.S. Department of Education,* 2003 WL 21024825 at *3 (3rd Cir.2003) (unpublished, nonprecedential decision) ("a court inquiring whether a debtor has made a good

faith effort to repay a student loan must consider the following factors: (1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities, and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy").

ECMC contends that a genuine dispute exists with respect to whether the Debtor has made a good faith effort to repay her student loan debt because, argues ECMC in turn, genuine disputes exist regarding whether the Debtor has (a) maximized her income, (b) made an effort to restructure her student loan debt prior to bankruptcy, and (c) committed discretionary funds to nonessentials at the expense of the repayment of her student loan debt. The Debtor, not unexpectedly, disagrees with each of the foregoing arguments by ECMC. A genuine dispute exists regarding a fact if the evidence is such regarding such fact that a reasonable jury could return a verdict for the nonmoving party. *See, e.g., Hankins v. Temple University,* 829 F.2d 437, 440 (3rd Cir.1987). Therefore, "[a]s the party with the ultimate burden of persuasion on the issue of 'undue hardship,' . . . [the Debtor] must demonstrate that no reasonable fact finder could possibly rule in favor of . . . [ECMC] on any of the three elements of the *Brunner* test[, including the good faith repayment prong, if she wishes to prevail on her summary judgment motion.]" *Newman,* 304 B.R. at 197 (pointing out that "[t]his is a difficult standard, which explains why few courts have granted a debtor relief under section 523(a)(8) based upon a summary judgment finding of 'undue hardship'"). Unfortunately for the Debtor, the Court holds, at a minimum, that the Debtor fails to demonstrate that a reasonable fact finder could not find that she has failed to maximize her income. The Court so holds because, as the Debtor concedes, she presently works, and has worked for many years prior to the present, but part-time, and for a wage that is just slightly better than minimum wage, notwithstanding that she obtained her college degree in 2000; the Court agrees with ECMC that a reasonable fact finder could thereby find that the Debtor has failed to maximize her income. Because a reasonable fact finder could find that the Debtor has failed to maximize her income, a reasonable fact finder could consequently find as well that the Debtor has failed to make a good faith effort to repay her student loan debt. Therefore, a genuine dispute exists both with respect to whether the Debtor has maximized her income and, consequently, with respect to whether she has made a good faith effort to repay her student loan debt, thereby dictating that the Debtor's summary judgment motion be denied with prejudice.[2]

Because the Court denies the Debtor's summary judgment motion on the ground that a genuine dispute exists regarding whether the Debtor has (a) maximized her income, and (b) consequently made a good faith effort to repay her student loan debt, the Court need not address whether, as ECMC argues, the other two genuine disputes exist that have been advanced by ECMC. The Court nevertheless rules, for purposes of the upcoming trial in the instant matter, that a genuine dispute does not exist regarding whether the Debtor has committed discretionary funds to nonessentials at the expense of

---

2. The Court, at the April 27, 2005 hearing, also raised *sua sponte* the issue of, and now concludes as well that a genuine dispute exists regarding, whether the Debtor has minimized her expenses. The Court predicates such conclusion upon the fact that, according to the Debtor's own Bankruptcy Schedule J, she makes charitable contributions on a monthly basis in the amount of $80, which amount could instead be dedicated to repayment of her student loan debt. The existence of such genuine dispute also serves to preclude the entry of a summary judgment in favor of the Debtor.

the repayment of her student loan debt. ECMC predicates the existence of such dispute upon the fact that the Debtor (a) borrowed $23,000 in approximately 1998, or roughly two years prior to when her student loans first went into repayment status, and (b) failed to dedicate any of such $23,000 to the repayment of her student loan debt. The Court holds that a reasonable fact finder could not find as ECMC wishes, that is that the Debtor has exhibited bad faith vis-a-vis the repayment of her student loan debt by virtue of how she spent such $23,000, because (a) the Debtor spent such money approximately two years prior to when such debt went into repayment status, and (b) what is relevant for the purpose of ascertaining whether the Debtor made a good faith effort to repay her student loan debt is how she spent discretionary funds subsequent to when such debt first went into repayment status, *Pelliccia,* 2003 WL 21024825 at *2 (relevant time frame for considering whether a student loan debtor made good faith efforts to repay his or her student loan debt is "the entire time period between the date on which the first loan payment became due and the date on which the debtor filed for bankruptcy").

The Court also holds, of course, consistent with its ruling set forth in part II. above, that ECMC cannot succeed in demonstrating that a genuine dispute exists regarding whether the Debtor has made an effort to restructure her student loan debt prior to bankruptcy by pointing to the fact that the Debtor failed to take advantage of the WDF ICRP.

## IV.

**IN SUMMARY**, the summary judgment motions of both the Debtor and ECMC are **DENIED WITH PREJUDICE**.