BYE, Circuit Judge, joining, in part, Judge SMITH’S
concurring opinion, and dissenting.
The court holds the bankruptcy court erred in discharging Mark Jesperson’s student loans under 11 U.S.C. § 523(a)(8)’s undue hardship provision. I write separately to emphasize that, in accordance with the overwhelming majority of courts, a debtor is not ineligible for a hardship discharge if capable of making payments under the William D. Ford Federal Direct Student Loan Program’s Income Contingent Repayment Plan (ICRP). 20 U.S.C. § 1087e(d)(l)(D); 34 C.F.R. § 685.208; see also 20 U.S.C. § 1087e(d) (authorizing the Secretary of Education to implement alternative plans for repayment of student loans). Additionally, I dissent from the majority’s opinion denying Jesperson a hardship discharge, and its rejection of the bankruptcy court’s findings of fact and application of those facts to its § 523(a)(8) analysis.
Under § 523(a)(8), student loans may be discharged for undue hardship. The debt- or bears the burden of proof by a preponderance of the evidence, Ford v. Student Loan Guarantee Foundation of Ark., 269 B.R. 673, 675 (8th Cir. BAP 2001), and the court determines undue hardship based on a “totality of the circumstances” test, In re Long, 322 F.3d 549, 554 (8th Cir.2003). Under the test, the court considers 1) the debtor’s past, present and reasonably reliable future financial resources, 2) a calculation of the debtor’s and his dependents’ reasonable necessary living expenses, and 3) any other relevant facts and circumstances in the particular bankruptcy case. Id.; Andrews v. S.D. Student Loan Assistance Corp., 661 F.2d 702, 704-05 (8th Cir.1981).
[I]f the debtor’s reasonable future financial resources will sufficiently cover payment of the student loan debt — while still allowing for a minimal standard of living — then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor’s present employment and financial situation — including assets, expenses, and earnings — along with the prospect of future changes — positive or adverse — in the debtor’s financial position.
In re Long, 322 F.3d at 554-55. “[F]airness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.” Id. at 554.[3]
*787 Wholly separate from bankruptcy law and § 523(a)(8)’s undue hardship discharge provision is the ICRP, one of four student loan repayment options administered by the Department of Education. Under the ICRP, the annual amount owed by the borrower is the lesser of the amount that would be paid if the borrower repaid the loans in twelve years, multiplied by an annual percentage factor based on adjusted gross income, or 2) twenty percent of the borrower’s discretionary income. 84 C.F.R. § 685.209(a)(2). Discretionary income is defined as adjusted gross income minus the poverty guidelines, with an adjustment for family size. Id. at 685.209(a)(3). The ICRP requires a minimum monthly payment of five dollars, unless the formula results in no discretionary income. In such cases, the monthly payment is zero. Id. at 685.209(a)(6). If the payment is less than accrued interest, the unpaid interest is capitalized until the outstanding principal is ten percent greater than the original principal amount, after which interest continues to accrue but is no longer capitalized. Id. at 685.209(c)(5). The repayment period lasts twenty-five years, after which any unpaid balance is cancelled and may be reported to the Internal Revenue Service as taxable income. See In re Korhonen, 296 B.R. 492, 496 (Bankr.D.Minn.2003).
A debtor’s ability to qualify for the ICRP is only one factor to consider when undertaking the undue hardship inquiry. The availability of the ICRP does not trump our court’s longstanding preference for case-by-case consideration of the “unique facts and circumstances that surround [each] particular bankruptcy,” as embodied in our totality-of-the-circumstances test. In re Long, 322 F.3d at 554. Indeed, our court’s precedent finds ample support in the legislative history of the ICRP and § 523(a)(8), and the case law of our sister circuits. Therefore, I emphasize that placing undue weight on a debtor’s ability to qualify for the ICRP improperly limits the inherent discretion afforded to bankruptcy judges when evaluating requests for § 523(a)(8) relief, and reduces the totality-of-the-circumstances test to a simple arithmetical calculation.
The first provision making student loan debt nondischargeable was enacted as part of the Education Amendments of 1976. Pub.L. No. 94-482, § 127(a), 90 Stat.2081, 2141 (codified at 20 U.S.C. § 1087-3 (1976) (repealed 1978)). It was replaced by the Bankruptcy Reform Act of 1978, Pub.L. 95-598, § 523(a)(8), 92 Stat. 2549 (1978), under which student loan debt was nondis-chargeable for a five-year period following commencement of the repayment period, absent a showing of undue hardship. Congress later extended § 523(a)(8)’s period of nondischargeability to seven years, Pub.L. No. 101-647, § 3621(2), 104 Stat. 4789, 4965 (1990), and in 1998, eliminated any such provision from § 523(a)(8), Pub.L. No. 105-244, § 971(a), 112 Stat. 1581 (1998).
Prior to amending § 523(a)(8) in 1998, Congress implemented the William D. Ford Federal Direct Loan Program, Pub.L. No. 103-66, tit. IV(A) ch. 1, 107 Stat. 312 (1993) (codified at 20 U.S.C. § 1087a-h (2000)), which established four repayment options for student loan debtors, including the ICRP plan set forth at 34 C.F.R. § 685.208. Despite Congress’ proven willingness to amend § 523(a)(8) to *788 further restrict the dischargability of student loan debt, and in spite of the availability of the ICRP option for repayment of student loans, Congress chose to continue the undue hardship exception to nondis-chargeability. Indeed, provisions in the House and Senate bills designed to make student loans conclusively nondischargeable were stripped from the bills in favor of maintaining § 523(a)(8)’s undue hardship exception to nondischargeability of student loan debt. Ante at 784.
Since 1976, Congress has demonstrated its willingness to restrict the ability to discharge student load debt, but has refused to abrogate § 523(a)(8)’s undue hardship provision. It expressly declined to do so when the ICRP was established, even though it offers a less onerous means by which student loan debt may be managed. Based on this legislative history, I conclude Congress’ express refusal to further circumscribe or eliminate § 523(a)(8) demonstrates its continued viability — even when the ICRP is an available option. Notably,
Congress recently enacted the most sweeping reform of bankruptcy law since the enactment of the Bankruptcy Code in 1978. Yet Congress left § 523(a)(8)’s “undue hardship” language intact. Had Congress intended participation in the ICRP — implemented in 1994 — to effectively repeal discharge under § 523(a)(8), it could have done so. In addition, requiring enrollment in the ICRP runs counter to the Bankruptcy Code’s aim in providing debtors a “fresh start.” The debtor is encumbered with the debt for an additional twenty-five years, regardless of the length of the student loans.
In re Barrett, 487 F.3d 353, 364 (6th Cir. 2007) (internal quotation, footnote, and citations omitted).
This conclusion is also supported by decisions from every circuit to have addressed this issue. See, e.g., In re Mosley, 494 F.3d 1320, 1327 (11th Cir.2007) (holding under the three-part Brunner test a debtor’s failure to enroll in the ICRP is not a per se bar to a finding of good faith); In re Barrett, 487 F.3d at 364 (rejecting a per se rule requiring enrollment in the ICRP because it would eliminate § 523(a)(8)’s undue hardship provision from the Bankruptcy Code); In re Nys, 446 F.3d 938, 947 (9th Cir.2006) (holding participation in a repayment plan is only one factor to be considered in determining whether debtor can prove undue hardship under the three-part Brunner test); In re Alderete, 412 F.3d 1200, 1206 (10th Cir. 2005) (noting participation in a repayment plan is not required to satisfy the Brunner test); In re Frushour, 433 F.3d 393, 402 (4th Cir.2005) (noting participation in a repayment plan is an important consideration under the Brunner test, but not dis-positive). While each of these cases was decided under the three-part Brunner test, and not our circuit’s totality-of-the-circumstances test, they unanimously reject the proposition that eligibility for or participation in the ICRP precludes an undue hardship discharge of student loan debt under § 523(a)(8). Other courts, applying the totality-of-the-circumstances test, have repeatedly reached the same conclusion.
[T]he William D. Ford Program is no silver bullet for student loan creditors to avoid discharge of student loan debts owing to undue hardship if the creditors ... demonstrate that a particular debtor did in fact know about and understand such alternatives for resolving student loan debts.
Cheney v. ECMC, 280 B.R. 648, 665 (N.D.Iowa 2002).
Similarly,
*789 The defendants’ argument is nothing less than a per se rule that there can never be a discharge of a student loan for an undue hardship where the debtor is eligible for the Income Contingent Repayment Plan. This cannot be right. The Income Contingent Repayment Plan cannot trump the Congressionally mandated individualized determination of undue hardship. The Income Contingent Repayment Plan is but one factor to be considered in determining undue hardship, but it is not determinative.
In re Korhonen, 296 B.R. 492, 496 (Bankr. D.Minn.2003) (citations omitted).
And finally,
“[W]hile consideration of the debtor’s repayment options is one factor that a court may consider in determining “undue hardship” under the totality-of-the-eircumstances, I am unaware of any decision which holds that the availability of the William D. Ford Federal Direct Loan Program to a debtor — including its “income contingent repayment plan” option — by itself requires a finding that it would not be an “undue hardship” to repay the student loan obligation.”
In re Bettie, 311 B.R. 496, 506 (Bankr. N.D.Ill.2004) (quoting Newman v. ECMC, 304 B.R. 188, 195 (Bankr.E.D.Pa.2002)).
The reasoning of these cases — coupled with a dearth of contrary precedent — convinces me the ICRP is but one factor for consideration when applying the totality-of-the-cireumstances test, and does not act as an absolute barrier to the discharge of student loan debt under § 523(a)(8). Further, overemphasizing the impact of the ICRP would be antithetical to the exercise of judicial discretion mandated by § 523(a)(8) and reflected in our totality-of-the-circumstances analysis. Accordingly, I concur in Judge Smith’s conclusion that the ICRP is merely a factor to consider under our court’s totality-of-the-circumstances test.
Applying these principles, I dissent from majority’s rejection of the bankruptcy court’s findings of fact and application of those facts to its § 523(a)(8) analysis.
In a bankruptcy appeal, this court sits as a second court of review; we therefore apply the same standards of review to the bankruptcy court’s decision as the district court does. We review the bankruptcy court’s findings of fact for clear error and its conclusions of law de novo. The question of whether declining to discharge the debts would pose an undue hardship ... is a question of law, which we review de novo. Subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error.
In re Reynolds, 425 F.3d 526, 531 (8th Cir.2005) (internal citations omitted).
For a finding to be clearly erroneous, it “must strike the reviewing court as more than just maybe or probably wrong; it must strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.” In re Papio Keno Club, 262 F.3d 725, 728 (8th Cir.2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988)). Findings necessary to a determination of undue hardship include, “a special consideration of the debtor’s present employment and financial situation — including assets, expenses, and earnings — along with the prospect of future changes — -positive or adverse — in the debtor’s financial position.” In re Long, 322 F.3d at 554-55.
The bankruptcy court found Jesperson had reasonable monthly expenses of $2857. This amount included $1000 for rent, $1000 in child support for two children, $325 for food, and $431.66 for vehicle maintenance, gas, and parking. To this amount, the court added $100 for vehicle insurance and *790 additional vehicle maintenance. With the exception of the extra $100 in vehicle-related costs, the expenses determined by the bankruptcy court find adequate record support and are not clearly erroneous.
Jesperson has previously paid $700 per month for rent, and, although at the time of trial he was living in a relative’s basement and anticipated spending only $500, the court concluded his future rent expenses would increase, and in the relevant urban housing market, $1000 was reasonable. Further, Jesperson was court ordered to pay $500 in monthly child support for one child, and, though no order was in place as to the second child, when financially able, he voluntarily paid child support for the second. As for the vehicle expenses, Jesperson owned a 1988 truck with over 200,000 miles on the odometer. He used the vehicle to drive to work, for visiting his children (one in Duluth), and to regularly attend AA meetings several times per week. These undisputed findings are not clearly erroneous and demonstrate the reasonable nature of Jesperson’s claimed expenses. I reject the majority’s assertion that Jesperson failed to demonstrate good faith because he aspired to live somewhere other than his brother’s basement. I also reject the majority’s implicit conclusion that in the absence of a court order, Jesperson’s contributions toward the support of his second child cannot be credited. Furthermore, the court noted Jesperson’s projected monthly budget failed to account for medical or dental expenses, savings or retirement, and he owned no assets with more than nominal value. Thus, I conclude it was not clearly erroneous to find Jesperson proved reasonable monthly expenses of at least $2750. Indeed, the bankruptcy court’s belief that the expenses were understated is almost certainly true.
The district court also considered Jes-person’s past, current, and future earning capacity. At the time of trial Jesperson was enjoying an unprecedented period of prosperity. For approximately four months, he had been earning the annual equivalent of $48,000, working in a temporary legal position. Prior to that, Jesper-son took and abandoned two full-time legal jobs, as well as a third through a temp agency, and proved a failure at starting his own law practice. His adjusted gross income for the years leading up to his bankruptcy petition included: $13,207 in 2003; $14,828 in 2004; $21,584 in 2005; and $13,692 in 2006. The bankruptcy court found “his employment history does not openly demonstrate substantive ineptitude, [but] his record of work experience is besmirched by a patent lack of ambition, cooperation and commitment.” These facts are undisputed, and based thereon, it was not unreasonable for the court to conclude “the expectation that Jesperson maintain or increase his current rate of pay is one part rational to two parts imagination.”
The bankruptcy court next factored the availability of the ICRP into its totality-of-the-circumstances analysis. Assuming Jesperson maintained his current level of earnings — an assumption bordering on fanciful — his ICRP payment for a family of three (himself and two minor dependents) would be $514. The bankruptcy court, however, found, based on Jesperson’s after-tax adjusted gross income and reasonable monthly expenses, his approximate monthly surplus was only $55. Thus, he was financially unable to make the ICRP payment. Moreover, even assuming Jes-person made a nominal monthly ICRP payment, i.e., $5 or even $0, the court concluded he would 1) never reduce the principal, 2) be unable to cover unexpected expenses, e.g., unfunded medical, dental, or vehicle replacement costs, and 3) never contribute to a savings or retirement plan. *791 Instead, Jesperson would remain saddled with the debt, “only to look forward to a quarter century of negative amortization, the burden of poor credit and a cash-only lifestyle.... ”
Once again, the bankruptcy courts findings are adequately supported by the record. But for a miscalculation with respect to the ICRP’s ten percent cap on capitalization of unpaid interest — which the majority seizes upon as if it has some material effect on Jesperson’s dismal financial picture — the facts, and the court’s analysis thereof, demonstrate that continuing to carry the undischarged student loan debt will relegate Jesperson and his two minor children to a life punctuated by constant financial crisis and impoverishment.
The court characterizes Jesperson as the “paradigmatic example of a student loan debtor for whom ICRP eligibility ... requires a conclusion of no hardship.” Ante at 782. The opinion, however, suggests a broader holding that would draw into its net all student loan debtors who are eligible for ICRP participation. I understand the court’s frustration — Jesper-son is not a sympathetic figure. After availing himself of the federal student loan program and amassing a large debt, he has failed to achieve any demonstrable success in his chosen profession, and has ignored his promise to repay the debt. Nonetheless, bankruptcy law does not only provide relief to the well-intentioned or to hapless victims of circumstance. Even malfeasants may seek a fresh start. Today’s decision punishes Jesperson for his financial mismanagement and is the paradigmatic example of bad facts leading to bad law.
For the reasons stated herein, I respectfully dissent.

. Our totality-of-the-circumstances test differs from the three-prong test set forth in Brunner v. N.Y. State Higher Education Services Corporation, 831 F.2d 395 (2d Cir.1987), which is followed in nearly all other circuits. Under Brunner, a debtor must show 1) he cannot, based on existing income and expenses, maintain a minimal standard of living for himself and his dependents if required to repay stu-
dent loan debt, 2) his affairs will persist for a significant portion of the repayment period, and 3) good faith repayment efforts. Id. at 396. The debtor bears the burden of proving each prong, and a failure to prove any prong renders the debt nondischargeable. In In re Long, our court expressly rejected Brunner.
[U]nder a Brunner analysis, if the bankruptcy Court finds against the Debtor on any of *787 the three prongs of the test, the inquiry ends and the student loan is not dischargea-ble. We prefer a less restrictive approach to the "undue hardship” inquiry. We are convinced that requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in § 523(a)(8)(B).
322 F.3d at 554 (internal citation omitted).